521 A.2d 946

**Eugene J. PALLADINO, III, Administrator of the Estate of Cynthia S. Palladino, a/k/a Cindy Palladino, Deceased**

**v.**

**Andrew DUNN, Intervenor,**

**v.**

**HARLEYSVILLE INSURANCE COMPANY**

**v.**

**BELLEFONTE UNDERWRITERS INSURANCE COMPANY**

**v.**

**GOLD BRAND DATSUN, INC., Additional Defendant.**

**Appeal of BELLEFONTE UNDERWRITERS INSURANCE COMPANY and Gold Brand Datsun, Inc.**

Superior Court of Pennsylvania.

Argued Sept. 16, 1986.

Filed Feb. 24, 1987.

100

Thomas J. Barnes, Philadelphia, for appellants.

Allen W. Toadvine, Langhorne, for Dunn, appellee.

Jay H. Karsch, Doylestown, for Harleysville, appellee.

Before CIRILLO, President Judge, and MONTEMURO and JOHNSON, JJ.

JOHNSON, Judge:

This appeal is from a declaratory judgment in which the lower court determined that Bellefonte Underwriters Insurance Company (Bellefonte) was the provider of primary liability coverage for damages arising from a motor vehicle accident where plaintiff's decedent was killed and a passenger injured. This accident occurred while decedent was in the process of purchasing an automobile from Gold Brand Datsun, Bellefonte's insured. In this case of first impression we are called upon to determine whether the decedent had a reasonable opportunity to inspect the vehicle she was purchasing and whether acceptance had occurred under the provisions of the Uniform Commercial Code § 2606, 13 Pa.C.S. 2606.

On February 9, 1983, Cynthia Palladino visited the showroom of Gold Brand Datsun and expressed interest in purchasing a Model 200 SX Roadster with a dealer-installed top. She did not test drive the car. She did, however, agree to a price. She also left a $5.00 deposit and signed a

purchase order which listed the total price of the vehicle as $9,875. Ms. Palladino returned to Gold Brand the following evening to leave an additional deposit in the form of an insurance check for $5,462.35. On February 11, Ms. Palladino had her automobile insurance carrier, Harleysville Insurance Company (Harleysville), add the 1983 Datsun 200 SX coupe to her auto insurance policy. Ms. Palladino returned to Gold Brand on February 17, 1983, the date the car was ready for delivery. She brought the balance of money due, $4,406.65, and her automobile license plate with her. Andrew Dunn, the Gold Brand salesman, affixed her license plate to the Datsun SX 200. Ms. Palladino refused to sign the final papers or transfer the remaining balance of the purchase price without a test drive. Dunn attempted to convince the decedent that any problems would be corrected during the warranty period, but she continued to insist on a test drive. Dunn then attempted to drive her in the car, but Ms. Palladino stated. "No, I have bought this car and it is mine, I want to drive it." After that exchange, Dunn took the passenger seat, with Ms. Palladino driving. As they pulled out onto the highway from the dealer's lot, the fatal collision occurred.

Plaintiff, on behalf of Ms. Palladino's estate, filed a declaratory judgment action to determine the issue of whether insurance coverage would be provided by decedent's carrier, Harleysville, or Gold Brand's carrier, Bellefonte. On February 28, 1986, the lower court found the vehicle to be owned by Gold Brand Datsun and directed that Bellefonte was to provide primary coverage. The lower court also directed Harleysville to provide excess coverage since the Datsun 200 SX was a "covered auto" under the terms of decedent's policy. Bellefonte filed a motion for post-trial relief on March 17, 1986, under Pa.R.C.P. 227.-1(a)(2), which was denied. This appeal ensued.

■■■ A procedural irregularity must be addressed initially. The provisions of Pa.R.C.P. 1601(a) require that in an

action for declaratory judgment "[t]he practice and procedure shall follow, as nearly as may be, the rules governing the Action in Equity." This Court in *Hertz v. Hertz*, 302 Pa.Super. 259, 448 A.2d 626 (1982), interpreted this rule to require "an adjudication in accordance with Pa.R.C.P. 1517, the filing of exceptions thereto and subsequent disposition by a court *en banc* under Pa.R.C.P. 1518...." *Id.*, 302 Pa.Superior Ct. at 261, 448 A.2d at 627. In the usual declaratory judgment proceeding, this Court will refuse to consider an issue which has not been preserved by the filing of exceptions to the order or decree entered by the trial court. While Appellant filed a post-trial motion under Pa.R. C.P. 227.1(a)(2), it was not timely filed, and was denied by the lower court. In this case, however, the order from which the appeal was taken contained no findings of fact, no conclusions of law, and no language to suggest that the order was anything but a final order or that parties were required to file exceptions to preserve a right of appeal. This Court has determined in *Storti v. Minnesota Mutual Life Insurance Company*, 331 Pa.Super. 26, 479 A.2d 1061 (1984) that the failure to file exceptions in these circumstances will be excused. *Id.* 331 Pa.Super. at 27, 479 A.2d at 1062. Accordingly, the failure to file exceptions will not defeat appellate review. *See also,* Recommendation No. 79, Proposed Amendment to Rule of Civil Procedure 227.1 Governing Post-Trial Relief, Pa., 515 A.2d XC (1986).

Our scope of review is narrow. *Supp v. Erie Insurance Exchange*, 330 Pa.Super. 542, 479 A.2d 1037 (1984). Inasmuch as Pennsylvania Rule of Civil Procedure 1601(a) provides that a declaratory judgment action follow the practice and procedure of an action in equity, we will review the determination of the court below as we would a decree in equity. *Id.* The factual conclusions of a chancellor have the force of a jury verdict and will be disturbed on appeal only where they are not supported by adequate evidence, *Shepley v. Dobbin*, 351 Pa.Super. 182, 505 A.2d 327 (1986). However, the chancellor's inferences and conclusions, which

are drawn from the facts, and the application of the law are always subject to review. *Supp, supra.*

The court below decided the proper construction of the insurance policies in this case as a matter of law and these issues are not now before us.

■ The only contention raised on appeal is that the lower court committed error when it held Cynthia Palladino not to be the owner of the 200 SX Datsun roadster she was driving at the time of her death.[1] After careful consideration, we have concluded that Ms. Palladino had not accepted the vehicle under the provisions of Uniform Commercial Code Section 2–606, 13 Pa.C.S. § 2606, and accordingly affirm the decision of the lower court. The substantive issues involved in this action were well-stated and correctly decided by the learned trial judge.

We adopt the following portions of his opinion.

Bellefonte does not dispute that its policy would apply if the vehicle was owned by Gold Brand Datsun at the time of the accident. It argues, however, that the risk of loss had passed to Ms. Palladino because she had transferred her insurance coverage from her old car to the one in question and she was driving the car and had complete control of it at the moment of impact.

We find, nevertheless, that the transaction was not complete and that ownership of the vehicle had not passed to Ms. Palladino at the time of her death. She had not paid the balance of the money due nor had she signed the final papers. She was not free to take possession of the vehicle and leave the premises alone. At the time of the accident, Andrew Dunn, the salesman, was riding in the car with her as typical on a test drive.

---

1. Appellant's question:
    I. Did not the lower court err in holding that Cynthia Palladino did not own the vehicle in question, where the Seller had perfected its right to enforce the contract, by incorrectly holding that no acceptance of the Seller's tender of conforming goods identified to the contract had occurred.

Bellefonte argues that under the Pennsylvania Uniform Commercial Code, tender of the vehicle which conformed to the terms of the contract triggered Ms. Palladino's obligation to pay for it and that Gold Brand Datsun could have successfully compelled her to perform the contract. It bases its argument on the deposition and affidavit which it says show that there were no mechanical problems with the car and that all of Ms. Palladino's requests concerning optional equipment were fulfilled.

Bellefonte argues that Ms. Palladino had a right to reject the vehicle only if it failed to conform to the contract or to revoke her acceptance only under certain conditions. We find, however, that there was no acceptance. It was at this point in time that the transaction was cut short.

We cannot assume, as Bellefonte would have us, that if any substantial nonconformity had existed either Gold Brand Datsun's mechanic or Ms. Palladino would have discussed it upon entering the vehicle. Nor can we assume that had Ms. Palladino rejected the car, Gold Brand Datsun would have proved that it conformed in every respect to the terms of the contract.

The [Uniform Commercial Code] Code defines "acceptance" as follows:

What constitutes acceptance of goods

(a) General rule.—Acceptance of goods occurs when the buyer:

(1) *after a reasonable opportunity to inspect the goods* signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity:

(2) fails to make an effective rejection (section 2602(a)), but such acceptance does not occur *until the buyer has had a reasonable opportunity to inspect them;* or

(3) does [any] act inconsistent with the ownership of the seller; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

(b) Part of Commercial unit.—Acceptance of part of any commercial unit is acceptance of that entire unit.

13 [Pa.C.S.] § 2606 (emphasis added).

■ It is clear from the above that Ms. Palladino was entitled to a reasonable opportunity to inspect the vehicle before acceptance. This she did not have. The accident occurred as she was pulling out of Gold Brand Datsun's parking lot. We cannot conclude that any nonconformity or defect, substantial or insignificant, could have been discovered in such a short span of time. In light of the fact that there was no acceptance, ownership had not passed from Gold Brand Datsun to Ms. Palladino at the time of the accident. Therefore, Gold Brand Datsun's insurer, Bellefonte, must provide primary coverage.

Opinion, 2/28/86 at 6–8.

Appellant offers no reason why the lower court's reliance on Uniform Commercial Code Section 2–606 may have been improper. Instead, appellants assert in a conclusory fashion that Ms. Palladino was permitted a "reasonable time" to inspect and then to reject the Datsun 200 SX or to revoke her acceptance. It is obvious that Ms. Palladino had no time to test drive the car. It had barely left Gold Brand's sales lot. The gravamen of Appellants' argument is that had decedent lived, she would have accepted the car since it had no defects and, had she lived, the dealer could have compelled her to complete the transaction.

The question of what might have happened if the accident had not occurred is speculative and completely irrelevant to the issue of whether ownership of the vehicle had transferred at the moment of impact. The decedent was entitled to a reasonable opportunity to inspect the car under 13 Pa.C.S. § 2606(a)(1) and (2). She was deprived of the opportunity to do so. The transaction was permanently suspended at the point of decedent's test drive, forestalling any possibility that she would have a reasonable opportunity to inspect and accept the vehicle. We find no error.

The order of the lower court is affirmed.