NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee

v.

Robert CATALINI and Kathleen Catalini, h/w and Rose Catalini, Appellants.

Superior Court of Pennsylvania.

Argued Sept. 22, 2010.
Filed March 25, 2011.

Louis M. Cambria, Philadelphia, for appellants.

James C. Haggerty, Philadelphia, for appellee.

BEFORE: BOWES, DONOHUE, and OLSON, JJ.

OPINION BY BOWES, J.:

In this declaratory judgment action, Robert Catalini and Kathleen Catalini, h/w and Rose Catalini (hereinafter referred to collectively as "Appellants") appeal from the judgment entered on the verdict in favor of Nationwide Mutual Insurance Company ("Nationwide") following a bench trial on stipulated facts. We affirm.

The trial court succinctly summarized the relevant facts as follows:

From January of 2002 to November of 2004, Robert Catalini held an insurance policy with Nationwide wherein he was insured for three vehicles with BI [bodily injury] liability limits of $100,000/$300,000 and UIM [underinsured motorist liability] limits of $15,000/$30,000. During that time period, Mr. Catalini replaced two cars under his policy, but did not change the coverage limits. Mr. Catalini's BI limits were therefore substantially greater than his UIM limits during that two-year period.

In November of 2004, Mr. Catalini contacted his insurance agent and requested a decrease in his BI limits from $100,000/$300,000 to $25,000/$50,000. He also requested an increase in his UIM limits from $15,000/$30,000 to $25,000/$50,000. (Stipulation of Facts, No. 18). The Torrence Agency, an agent of Nationwide, sent Mr. Catalini a change request form which documented the change in coverage that Mr. Catalini requested. The form stated "Change BI to 25/50. Change UM BI, UI BI to 25/50 non-stacked." Mr. Catalini signed the form and returned it to the Torrence Agency. The policy limits were changed accordingly and thereafter contained equal coverage for BI and UIM liability.

In October of 2006, Mr. Catalini requested another change in his policy. He sought to replace his Porsche with a 2007 Audi. (Stipulation of Facts, No. 21).

Mr. Catalini also sought to obtain the coverage that would permit him to lease the Audi, which was a BI limit of $100,000/$300,000. The Torrence Agency responded by sending a policy change form memorializing Mr. Catalini's request. The form stated[,] "Please replace 01 PORS with 07 Audi VIN # WAUDF78E57A101464. Change BI limits to 100/300. Leave other coverage the same and add lease holder as requested." (Stipulation of Facts, Exhibit E). After Mr. Catalini signed and dated the form, he returned it to the Torrence Agency. In reliance upon the October 2006 form signed by Mr. Catalini, Nationwide concluded that Mr. Catalini selected $100,000/$300,000 in BI liability limits and elected to maintain $25,000/$50,000 in UIM coverage. As such, Nationwide increased Mr. Catalini's BI liability limits to $100,000/$300,000. The UIM coverage remained at its previous level of $25,000/$50,000. This was the composition and status of Robert Catalini's policy at the time of the underlying accident.

Trial Court Opinion, 5/25/10, at 2–3.

On December 4, 2006, Kathleen and Rose Catalini, Mr. Catalini's wife and mother, respectively, sustained personal injuries in an automobile collision caused by William M. The parties did not dispute William M.'s liability for the physical injuries sustained in the collision, and his motor vehicle insurance company, USAA Casualty Insurance Company, tendered Appellants the coverage limits of William M.'s liability policy, $30,000. Following the collision, Nationwide forwarded to Mr. Catalini a standard UIM sign-down form so he could memorialize his re-election of reduced UIM coverage. Mr. Ca-

talini refused to execute the form. Thereafter, Appellants filed a claim with Nationwide to recover UIM benefits up to the limits of their coverage, which they claimed to be $100,000/$300,000.

On May 14, 2007, Nationwide filed a complaint seeking declaratory and injunctive relief. The crux of the complaint was that the applicable policy limits for Appellants' UIM coverage was $25,000/$50,000. Hence, Nationwide sought a judicial declaration that it had no further obligation to pay additional UIM benefits to Appellants. In turn, Appellants countered that the policy change form that Mr. Catalini executed in October 2006 was invalid and that he intended to increase the policy limits of both the bodily injury liability coverage and the UIM coverage to $100,000/$300,000. Following a non-jury trial on stipulated facts, on November 13, 2009, the trial court issued a verdict in favor of Nationwide and against Appellants. The trial court subsequently denied Appellants' motion for post-trial relief. This appeal followed.[1] Appellants complied with the trial court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellants present two questions for our review:

Did the trial court err in determining that a valid election of lower underinsured motorist liability coverage was made by [the] insured, Robert Catalini[,] by executing a policy change request form in October 2006?

Does Nationwide have an obligation to their policy holders, the Catalinis, to provide underinsured motorist liability coverage in the same amount as their bodily injury liability coverage ($100,

1. While Appellants' notice of appeal from the March 11, 2010 order was premature, we address the merits of this appeal because judgment was subsequently entered on the

non-jury verdict on April 26, 2010. *See Harvey v. Rouse Chamberlin, Ltd.,* 901 A.2d 523, 524 n. 1 (Pa.Super.2006).

000.00/[$]300,000.00) when the ambiguous policy change request signed by Robert Catalini in October 2006 did not contain an express designation of specific amount of underinsured motorist liability coverage as required by law?

Appellant's brief at 4.

■■■■ At the outset, we note the applicable scope and standard of review.

When reviewing the determination of the trial court in a declaratory judgment action, our scope of review is narrow. *Palladino v. Dunn*, 361 Pa.Super. 99, 521 A.2d 946, 948 (1987); *Supp v. Erie Insurance Exchange*, 330 Pa.Super. 542, 479 A.2d 1037 (1984). As declaratory judgment actions follow the practice and procedure of an action in equity, we will review the determination of the court below as we would a decree in equity and set aside the factual conclusions of the trial court only where they are not supported by adequate evidence. *Palladino*, 521 A.2d at 948. However, when reviewing an issue of law in a declaratory judgment action, our scope of review is plenary and our standard of review is *de novo*. *Wimer v. PEBTF*, 595 Pa. 627, 939 A.2d 843, 850 (2007).

*Missett v. Hub International Pennsylvania, LLC,* 6 A.3d 530, 534 (Pa.Super.2010).

Next, we review the applicable statutory provisions. Pursuant to the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. §§ 1701–1799.7, motor vehicle liability insurance carriers are required to offer their named insureds uninsured motorist ("UM") and UIM liability coverage. Specifically, § 1731 of the MVFRL provides, in pertinent part, as follows:

(a) Mandatory offering.—No motor vehicle liability insurance policy shall be **delivered or issued** for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

75 Pa.C.S § 1731(a) (emphases added).

■■■■ However, § 1734 permits the named insured to request reduced UM and UIM coverage.[2] In order to effect a valid request for reduction pursuant to § 1734, the named insured's written request must "(1) 'manifest the insured's desire to purchase uninsured and underinsured coverage in amounts equal to or less than the bodily injury limits;' (2) be signed by the named insured; and (3) 'include an express designation of the amount of uninsured and underinsured coverage requested.'" *Erie Insurance Exchange v. Larrimore*, 987 A.2d 732, 737 (Pa.Super.2009) (quoting, in part, *Hartford Insurance Company v. O'Mara*, 907 A.2d 589, 602–603 (Pa.Super.2006) (*en banc*)). Hence, "to conform with § 1734, the written request must be signed by the insured and must contain an express designation of the amount of coverage requested, all manifesting the insured's desire to purchase coverage in amounts less than the bodily injury limits." *Id.* at 740.

Herein, Appellants challenge the trial court's finding that Mr. Catalini made a valid election of reduced UIM coverage during October 2006. The crux of this complaint is that the expression in the

**2.** 75 Pa.C.S. § 1734 provides, in pertinent part, as follows:

A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

signed policy change request form to "leave the other coverages the same" is ambiguous and therefore insufficient to effect a valid election. Indeed, Appellants interpret the statement as a request to increase the UIM coverage to an amount equal to the revised bodily injury liability limits. Appellants also highlight Nationwide's belated attempt to have Mr. Catalini execute a new UIM election form as evidence that the statement in the October 2006 policy change request was insufficient.[3] For the following reasons, no relief is due.

 The threshold question in the case at bar is whether Mr. Catalini's request to increase bodily injury liability coverage triggered the statutory requirement for an election for reduced UIM coverage pursuant to 75 Pa.C.S. § 1734. If a new election was not needed, we do not confront the subsidiary question regarding whether his signed statement to "leave other coverages the same" was a sufficient expression of the level of UIM coverage he desired. *See* Stipulated Facts Exhibit E.

Our Supreme Court addressed a similar issue in *Blood v. Old Guard Insurance Co.*, 594 Pa. 151, 934 A.2d 1218, 1227 (2007), and it held that the MVFRL did not require an insurer to re-comply with sections 1731 and 1734 following a change in liability limits. In that case, Blood executed a proper written request for reduced UM/UIM coverage when Old Guard Insurance Company ("Old Guard") issued the policy in 1986. Initially, the policy provided $500,000 liability coverage and $35,000 UI/UIM coverage with stacking for his three vehicles. During 2000, Blood executed a

"coverage selection form" indicating a desire to reduce his liability coverage from $500,000 to $300,000. The form also contained various options to change UM and UIM coverage levels; however, Blood did not mark any box or otherwise indicate that he wanted to alter his existing UM/UIM coverage.

Following a motor vehicle accident and Old Guard's payment of benefits equaling the UIM policy limit of $35,000 per vehicle, Blood sought a declaratory judgment. He argued that the UIM coverage limit was $300,000 per vehicle because Old Guard did not secure a new election when he decreased the coverage limits on his liability policy. The trial court granted summary judgment in favor of Old Guard. On appeal, an *en banc* panel of this Court drew upon *dicta* from our prior decision in *Smith v. Hartford Insurance Co.*, 849 A.2d 277 (Pa.Super.2004), a case addressing the **rejection** of UM/UIM coverage under section 1731(b) and (c), and it construed Blood's failure to mark a lesser level of UM/UIM coverage on the coverage selection form against Old Guard. *See Blood v. Old Guard Insurance Co.*, 894 A.2d 795 (Pa.Super.2006) (*"Blood I"*), *reversed by Blood, supra.* Accordingly, we reversed the trial court, and reformed the insurance limits to provide Blood $300,000 UM/UIM coverage per vehicle, the same as the liability coverage limit. *Id.* In a dissent, then Judge, now Supreme Court Justice Orie Melvin, posited that Blood's decision to change his policy limits in an existing policy did not require an "additional election of reduced UM/UIM coverage[.]" *Blood,*

---

**3.** The trial court rejected this argument, finding that the subsequent request was irrelevant to its interpretation of the 2006 policy change form. For reasons explained in the body of our Opinion, we do not reach the ultimate question concerning whether the 2006 policy change form was a valid election of reduced UIM coverage under 75 Pa.C.S. § 1734.

Nevertheless, we agree with the trial court's position that Nationwide's request that Mr. Catalini also execute the industry standard sign-down form did not affect the determination of whether the 2006 policy change form satisfied the three elements of a valid request for lower limits.

*supra* at 1224 (quoting then Judge Orie Melvin's dissent). Specifically, the dissent reasoned,

> When an applicant initially purchases an auto insurance policy, it is presumed that UM/UIM coverage will equal bodily injury limits unless the applicant signs a form electing to reject UM/UIM coverage or requests in writing to purchase lower UM/UIM coverage. *See* 75 Pa. C.S.A. §§ 1731, 1734. However, after a rejection or reduction of UM/UIM coverage has been made, the MVFRL does not explicitly require a new UM/UIM sign down form each time a policyholder changes the liability limits. *See* 75 Pa. C.S.A. §§ 1731, 1734, and 1791.

*Blood I, supra* at 799.

In reversing the decision of this Court, the Supreme Court dissected our rationale and found it unpersuasive. Instead, the Supreme Court adopted the dissent's reasoning, noted that Blood had failed to cite any proviso within the MVFRL that required Old Guard to execute a new election for reduced UIM limits under the facts of that case, and found "no facts on [the] record to indicate that [Blood] ever desired to alter th[e prior 1986] election." *Id.* at 1226–1227.

The same rationale applies in the case *sub judice*.[4] When Nationwide **issued** the operative insurance policy (No. 89B340894) on January 1, 2002, Mr. Catalini elected reduced UM/UIM coverage with policy limits of $15,000 per person/$30,000 per occurrence. On November 5, 2004, Mr. Catalini increased the policy limits for UM/UIM to $25,000/$50,000. Approximately two years later, Mr. Catalini contacted Nationwide and requested to alter the existing policy. The policy change form, which Mr. Catalini executed on November 1, 2006, reads as follows: "Please replace 01 Pors[.] with 07 Audi VIN # WAUDF78E57A101464. Change BI limits to 100/300. Leave other coverage the same and add lease holder as requested." *See* Exhibit E. Similar to the facts underlying our Supreme Court's holding in *Blood,* the record herein does not indicate that Mr. Catalini desired to alter his UIM coverage. Indeed, he specifically directed Nationwide to "[l]eave other coverage the same."[5] *Id.* Hence, we conclude that Nationwide was not required to have Mr. Catalini execute a new election for reduced UIM benefits to the existing insurance policy when he changed the limits of his bodily injury coverage.

The trial court declined to apply our Supreme Court's holding in *Blood* to the facts herein because that case involved a decrease in bodily injury coverage, whereas the change under the instant case was an increase in bodily injury coverage.[6] *See* Trial Court Opinion, 5/25/10, at 9 ("The *Blood* court, however, did not address

---

4. Appellants' brief fails to counter Nationwide's position on this point or even discuss the salient portions of our Supreme Court's rationale in *Blood.*

5. The trial court found, "[t]he language 'leave [other] coverages the same' is unambiguous and clearly seeks to maintain the same level of UIM coverage that [Mr. Catalini] had previously." Trial Court Opinion, 5/25/10, at 11. We agree. Appellants' contrary argument that the statement was a request to increase his remaining coverages to equal the bodily injury limit is conceptually offensive. As Nationwide accurately observed, this interpretation would necessarily require that we assume substantial increases to all of the remaining coverages in the auto policy, including comprehensive collision coverage, property damage liability, and first-party benefits. *See* Exhibit A (Auto Policy Declarations) at 1–2. It is beyond argument that Mr. Catalini never sought to increase these coverage limits.

6. While the trial court employed a different analysis in entering declaratory judgment, we can affirm the trial court's decision on any basis supported by the record. *Ross v. Foremost Insurance Co.,* 998 A.2d 648, 656 n. 7 (Pa.Super.2010).

whether a new UIM sign down form would be required where the insured has **increased** his bodily injury liability limits or whether there is a remedy in that situation.") (emphasis in original). Contrary to the trial court's position, however, the legal principles that the Supreme Court outlined in *Blood* are applicable regardless of whether an insured modifies an existing policy to increase or decrease the limits of bodily injury coverage.

The United States District Court for the Eastern District of Pennsylvania confronted a similar factual scenario in *State Farm Mutual Auto. Insurance Company v. Hughes*, 438 F.Supp.2d 526, 542–544 (E.D.Pa.2006), which was decided prior to our Supreme Court's decision in *Blood.* In that case, the insured increased her bodily injury liability coverage under an existing automobile policy from $50,000/$100,000 to $100,000/$300,000. Approximately ten years earlier, when the policy was issued in 1987, the insured had executed an election for reduced UM/UIM coverage ($25,000/$50,000), and she affirmed her election following the enactment of the significant amendments to the MVFRL in 1990. However, the insurance company did not obtain a new election when the insured increased her bodily injury liability coverage in 1997.

Confronted with having to determine whether, pursuant to Pennsylvania law, the insurance company was required to provide an additional opportunity for the insured to elect reduced UM/UIM coverage when she increased her body injury liability coverage, the district court disagreed with the rationale the *en banc* panel employed in *Blood I.* Instead, the district court prophetically opined,

> [W]e are unable to accept the . . . proposition that the Pennsylvania Supreme Court, if faced with the facts of this case, would impose upon [the insurer] the affirmative obligation to obtain a

new Section 1734 request in writing from [the insured] or suffer the consequence of having the UIM coverage be deemed to be at the same level of coverage as the bodily injury liability coverage limits.

*Id.* at 543. Thus, noting that "[t]he MVFRL does not state that the failure by an insurer to obtain an additional request in writing for reduced UM/UIM coverage after a modification of the policy's bodily injury liability limits results in UM/UIM coverage equal to liability limits," *id.* at 545, the district court concluded as follows:

> We . . . believe that the Supreme Court would recognize that the [insured's] election for reduced UIM coverage was not impacted by their 1997 increase to their bodily injury liability coverage limits. We find that the 1997 changes did not impose upon [the insurance company] any duty to obtain another written request from [the insured] for UIM coverage in amounts other than the bodily injury liability limits[.]

*Id.*

Although we are not bound by the *Hughes* Court's holding, upon review of that case, we are persuaded by the legal principles stated therein, especially in light of our Supreme Court's subsequent reasoning in *Blood.* Simply stated, in the absence of a statutory provision requiring insurers to provide a named insured a new opportunity to reject or reduce UIM benefits when increasing bodily injury liability benefits under an existing policy, we will not manufacture such a requirement under the facts of this case. It is undisputed that Mr. Catalini elected to reduce his UIM coverage when the policy was issued in 2002. While he subsequently raised the UIM coverage limits from $15,000/$30,000 to $25,000/$50,000 in 2004, which then equaled his bodily injury coverage, the MVFRL did not require Nationwide to

obtain a second formal election when he later increased his bodily injury liability coverage in 2006. As the district court noted in *Hughes, supra* at 545, ("such a requirement would not further the MVFRL's policy objective of containing insurance costs by allowing consumer choices that result in reduced premiums, particularly where, as here, the insureds previously opted for UM/UIM coverage at amounts other than their bodily injury liability limits.") (internal quotations, citation, and footnote omitted).

Accordingly, for all of the foregoing reasons, we affirm the trial court's declaratory judgment in favor of Nationwide and its finding that Nationwide had no further financial obligation to Appellants beyond the motor vehicle policy's UIM coverage limits of $25,000 per person/$50,000 per occurrence.

Judgment affirmed.