J-A16012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KEVIN BEACH AND TERESA BEACH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THE NAVIGATORS INSURANCE | : | |
| COMPANY | : | |
| | : | No. 1550 MDA 2019 |
| | : | |
| APPEAL OF: KEVIN BEACH | : | |

Appeal from the Order Entered August 29, 2019
In the Court of Common Pleas of Lancaster County
Civil Division at No(s):  CI-12-14596

BEFORE:  PANELLA, P.J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED SEPTEMBER 11, 2020**

Kevin Beach and Teresa Beach (collectively, "the Beaches") appeal from the August 29, 2019 order granting summary judgment in favor of Navigators Insurance Company ("Navigators")[1] in an underinsured motorist insurance ("UIM") dispute arising out of a 2009 automobile accident. On appeal, the Beaches contend the trial court erred in finding, as a matter of law, that the UIM coverage was $35,000 and that there were no genuine issues of material fact to support a bad faith claim. Based on the following, we affirm.

The trial court set forth the facts and procedural history as follows:

> The [Beaches'] claim stems from a motor vehicle accident that occurred on April 22, 2009 on Route 322 in Earl Township,

---

[1] The company was incorrectly identified as "The Navigators Insurance Group, Inc." or "The Navigators Group, Inc." throughout the underlying matter.

Lancaster County, Pennsylvania. [The Beaches'] car was hit by the tortfeasor, which caused [the Beaches] to swerve right and crash into a nearby farm. As a direct result, [the Beaches] suffered personal injuries and loss of consortium.

At the time of the accident, [the Beaches] were driving a 1992 Navistar 4900 owned by their employer, Walter & Jackson, Inc. (hereinafter "Employer"). The vehicle was insured by Navigators with a policy period of October 1, 2008 to October 1, 2009. After [the Beaches] settled with the tortfeasor's insurance company, [the Beaches] sought Underinsured Motorist ("UIM") coverage from Employer's policy issued by Navigators.[2]

_____

[2] In [the Beaches'] Complaint, it states that the tortfeasor's policy limits were $100,000. In the Joint Statement of Undisputed Facts, the parties inadvertently state that the tortfeasor's policy limits were $1,000,000. All parties agreed that $100,000 were the actual limits. Nonetheless, [the Beaches] settled with the tortfeasor's insurance company for $95,000.

_____

At all relevant times, the purchase of Employer's insurance was handled by their Controller, Catherine Hinnenkamp. While the Employer requested $1,000,000 in liability coverage, at the time of initial purchase in 2007[,] Ms. Hinnenkamp signed a document titled "Pennsylvania Uninsured Motorist and Underinsured Motorist Option Selector" which selected $35,000 in UIM coverage and submitted it to their insurance broker. The policy was thereafter issued accordingly. The following year, Ms. Hinnenkamp worked with the insurance broker to renew the policy with Navigators for 2008-2009, which policy was to include the previously established $35,000 UIM coverage on their automobile coverage.

When Navigators delivered a declaration page for the renewed policy on December 10, 2008, it contained several errors and typos, including $1,000,000 UIM coverage, contrary to what was requested in the waiver and proposal.[3] On the same day, Employer's insurance broker sent an e-mail to Navigators outlining the errors, typos, and inconsistencies on the declaration page. On January 14, 2009, Navigators issued a corrective endorsement to the erroneous declaration page which included an

endorsement showing UIM coverage of $35,000 selected by Employer.[4]

_____

[3] Other errors noted on the declaration page were under the Boiler & Machinery, General Liability, Inland Marine, and Crime coverages.

[4] The lower liability rates for uninsured and underinsured motorist coverage resulted in a lowered premium paid by Employer

_____

This was the policy in effect at the time of [the Beaches'] accident. Nonetheless [the Beaches] made a claim for $1,000,000 of UIM coverage. In response, Navigators tendered the $35,000 UIM policy limits.[5] As [the Beaches] believed the policy limits to be higher under the policy, they brought the instant suit alleging 1) breach of contract; 2) Bad Faith; and 3) a derivative claim for loss of consortium.

_____

[5] At some point, there was a discrepancy whether or not [the Beaches] accepted or rejected the $35,000.00 policy limits but this issue has been resolved through the [Joint Statement of Undisputed Material Facts].

_____

On April 6, 2017, Navigators filed a Motion for Partial Summary Judgment on the issue of the disputed amount of policy limits for underinsured motorist coverage. After Navigators' Motion, [the Beaches'] response thereto, and an oral argument thereon, [the trial court] granted the Partial Motion for Summary Judgment by Order on September 6, 2018 and concluded as a matter of law that on April 22, 2009, the UIM coverage policy limit was $35,000. As the only remaining issue was the Bad Faith claim, Navigators filed a second Summary Judgment motion on April 2, 2019. After another briefing on Navigators' Motion, [the Beaches'] response thereto, and an oral argument thereon, [the court] granted the Motion in favor of Navigators and dismissed [the Beaches'] Complaint. This timely appeal followed.

Trial Court Opinion, 1/13/2020, at unnumbered 1-4 (record citations omitted).

In reviewing a trial court's order granting summary judgment, we are guided by the following principles:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the [nonmoving] party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

> Additionally, we note that the interpretation of an insurance policy is a question of law that we will review *de novo*.

***State Farm Mut. Auto. Ins. Co. v. Dooner***, 189 A.3d 479, 481-482 (Pa. Super. 2018) (internal citations omitted).

In interpreting the language of an insurance policy, we recognize:

[W]e must apply general principles of contract interpretation, as, at base, an insurance policy is nothing more than a contract between an insurer and an insured. In so doing, we must ascertain the intent of the parties as manifested by the terms used in the written insurance policy. Just as in statutory construction, [w]hen the language of the policy is clear and unambiguous, a court is required to give effect to that language. Importantly, however, provisions of insurance contracts are invalid and unenforceable if

they conflict with statutory mandates because contracts cannot alter existing laws.

**Gallagher v. GEICO Indem. Co.**, 201 A.3d 131, 137 (Pa. 2019) (citations and quotation marks omitted)

In their first issue, the Beaches contend that the trial court erred in granting Navigators' motion for summary judgment because Navigators failed to meet the requirements for a valid underinsurance coverage sign-down form that complied with 75 Pa.C.S.A. § 1734. **See** Appellant's Brief, at 16. Specifically, they complain that Navigators "failed to produce any sort of formal request for a lowering of [Employer]'s limits, signed by the insured, that complies with Pennsylvania law." Appellant's Brief, at 18. The Beaches note that while Navigators points to the December 10, 2008 e-mail as evidence of a request to lower the UM/UIM limits for Employer, this email was sent from a third-party representative and therefore, is not legally sufficient under the MVFRL. **Id.**, at 18-19. They rely on **Transguard Ins. Co. of America, Inc. v. Hinchey**, 464 F.Supp.2d 425 (M.D. Pa. 2006), to support their argument.

"Pursuant to the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. §§ 1701-1799.7, motor vehicle liability insurance carriers are required to offer their named insureds uninsured motorist ("UM") and UIM liability coverage." **Nationwide Mut. Ins. Co. v. Catalini**, 18 A.3d 1206, 1209 (Pa. Super. 2011). Section 1731 generally requires that an insurance company may not issue a policy unless it provides UM/UIM coverage that is

- 5 -

equal to the bodily injury liability coverage, except as set forth in Section 1734. *See Blood v. Old Guard Ins. Co.*, 934 A.2d 1218, 1226 (Pa. 2007).

> [Section] 1734 permits the named insured to request reduced UM and UIM coverage. In order to effect a valid request for reduction pursuant to [Section] 1734, the named insured's written request must (1) manifest the insured's desire to purchase uninsured and underinsured coverage in amounts equal to or less than the bodily injury limits; (2) be signed by the named insured; and (3) include an express designation of the amount of uninsured and underinsured coverage requested. Hence, to conform with [Section] 1734, the written request must be signed by the insured and must contain an express designation of the amount of coverage requested, all manifesting the insured's desire to purchase coverage in amounts less than the bodily injury limits.

*Catalini*, 18 A.3d at 1209 (footnote, citations and quotation marks omitted).

A review of the record reveals the parties filed a joint statement of undisputed material facts, in which the Beaches stipulated to the following:

> 1. Navigators Insurance Company ("Navigators") provided automobile liability insurance coverage to [Employer] under Policy No. MLNC 0800003100 ("the Policy") for the policy period October 1, 2008 to October 1, 2009.
>
> 2. The Policy contains an endorsement which purports to modify the limits of the UIM coverage provided to $35,000.
>
> 3. Prior to the Policy being issued, [Employer] reviewed and approved an insurance proposal for its 2008-2009 insurance program.
>
> 4. The insurance coverage specifications set forth in the proposal submitted to Navigators for the 2008-2009 policy period called for [Employer] to carry a limit of liability of $35,000 for uninsured and underinsured motorist coverage.
>
> 5. [Employer]'s controller, Catherine Hinnenkamp, was authorized to handle all insurance matters for [Employer] including, without limitation, the UIM/UM execution of waivers and had previously

signed a waiver acknowledging that [Employer] was requesting a UIM limit lower than the bodily injury limit on the previous policy.

6. The Navigators Policy was delivered to [Employer] on December 10, 2008.

7. Subsequently, in an e-mail dated December 10, 2008, [Employer], through its insurance representative, requested that the Navigators Policy be corrected in several ways to be consistent with the insurance proposal.

8. One of the corrections involved correcting the Policy to reflect that the underinsured/uninsured limit on the Policy should be $35,000.

9. The endorsement provides as follows

"THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY"

***

CHANGES

THE UNINSURED/UNDERINSURED MOTORIST COVERAGE LIMIT HAS BEEN AMENDED TO $35,000 IN LIEU OF $1,000,000.

ALL OTHER TERMS AND CONDITIONS APPLY.

10. The correction requested by [Employer] was made to the Policy by Navigators by way of endorsement.

11. Navigators issued a corrective endorsement which was delivered to [Employer] on January 14[,] 2009.

12. As a result of Navigators issuing the corrective endorsement, [Employer] was issued a return premium by Navigators in the amount of $969.00.[1]

_____

[1] [Employer] was charged a premium for a $1.000,000 limit. The Return Premium of $969.00 referenced on the Endorsement reflects the difference in premium for a

> UM/UIM policy with a $1,000,000 limit of liability and $35,000 limit of liability.

Joint Statement of Undisputed Material Facts, 9/6/2018, at 1-3.

The Beaches do not dispute that when the policy at issue was initially purchased in 2007, Employer signed a waiver of limits that complied with Section 1734 and **Catalini**. Likewise, the Beaches do not challenge the written 2008-2009 insurance proposal wherein Employer requested the same limit of $35,000 for UIM liability coverage. They only take issue with the renewal policy, and complain that a second written Section 1734 waiver was required when the incorrect limits were listed. They allege the Employer's December 2008 email (notifying Navigators of the inconsistency and reiterating that the policy limits should include the $35,000 UIM coverage) was insufficient in terms of a written request as set forth in Section 1734.

Their argument fails as the "written request" requirement of Section 1734 has not been held to such an arduous standard by the courts of this Commonwealth. As noted above, in **Blood**, the Pennsylvania Supreme Court held that pursuant to the MVFRL, an insurance company cannot issue a policy with lower liability for UIM amounts unless it received a written request which complied with Section 1734. **See Blood**, 934 A.2d at 1226.

Subsequently, in **Orsag v. Farmers New Century Insurance**, 15 A.3d 896 (Pa. 2011), the Pennsylvania Supreme Court concluded that an insurance application satisfied Section 1734's "in writing" requirement because "it clearly indicated appellants' desire for reduced UM/UIM coverage, and was signed by

the insured." *Id.*, at 901. Further, the Supreme Court stated, "There may be a more detailed way of satisfying the 'writing' requirement, but it is unnecessary given the simple language of [Section] 1734 and the manner in which insurance coverage amounts are selected." *Id.*

Here, in disposing of the issue, the trial court found the following:

In this case the requirements of *Blood* and *Orsag* are more than satisfied since Navigators received not one but three written requests by its insured to carry lower UIM limits, first by signed [Section] 1734 waiver, then by written proposal, and lastly by e-mail. Not only was there specific expressed intent by the insured, but a mutual understanding and assent by the Navigators when they issued the corrective endorsement. While the erroneously issued renewal declaration page might have reflected something contrary to the three writings, the underlying policy contained valid UIM coverage in the amount of $35,000 as understood by the Navigators and its insured. Here, [the Beaches] attempted to take advantage of a common typographical error to create an extra $965,000 in coverage which was not requested, not paid for and never existed. As there was no genuine issue of material fact related to the existence of a valid election of lesser underinsured motorist liability coverage, granting summary judgment on this issue was proper.

Trial Court Opinion, 1/13/2020, at unnumbered 6-7 (record citations omitted).

We agree with the court's well-reasoned analysis. Based on the evidence before us, Navigators received three written requests by Employer to provide lower UIM limits as required in Section 1734: (1) the original, signed Section 1734 waiver; (2) the 2008-2009 written proposal which reflected the same lower UIM limits of $35,000 as previously issued; and (3) the December 2008 e-mail notifying Navigators of the incorrect limit amount and requesting policy reflects the $35,000 UIM limits. All three documents demonstrated an explicit

intent by Employer to purchase coverage in amounts less than the bodily injury limits, as well as a mutual understanding and agreement by Navigators when it issued the original policy and the corrective endorsement. *See Catalini*, 18 A.3d at 1209.

Furthermore, while the renewal declaration page reflected a coverage amount contrary to the original wavier and the proposal, Employer immediately notified Navigators of what can only be described as a scrivener's error, and Navigators shortly thereafter corrected the error by way of an endorsement so that the policy reflected Employer's expressed intent that the policy limits should still include the $35,000 UIM coverage.

Additionally, the Beaches have not provided this Court with case law supporting their position that Section 1734's writing requirement dictates a more onerous standard. Their reliance on *Hinchey* is misplaced for several reasons. First, "it is well-settled that this Court is not bound by the decisions of federal courts, other than the United States Supreme Court[.]" *Eckman v. Erie Ins. Exch.*, 21 A.3d 1203, 1207 (Pa. Super. 2011) (citation omitted). "We recognize that we are not bound by these cases; however, we may use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law." *Id.* (citation and quotations marks omitted).

Second, the facts in *Hinchey* are distinguishable from the present matter. In *Hinchey*, the defendant was injured in an accident while driving a vehicle that was owned by his employer. The employer, where the defendant

- 10 -

worked, used an insurance broker to apply for insurance with the plaintiff-insurance company. The insurance broker sent an email to the plaintiff-insurance company, which included, *inter alia*, a request for UIM limits of $500,000 per vehicle. This amount was less than the bodily injury liability limits of $1,000,000.00 per vehicle. The plaintiff-insurance company replied with a quote and the broker signed the policy acceptance form on behalf of the employer. The defendant was subsequently injured while driving one of the employer's covered vehicles.

The plaintiff-insurance company subsequently sought a declaratory judgment concerning the amount of UIM coverage available to the injured defendant and his spouse. The plaintiff argued that the amount of UIM coverage was limited to $500,000 per vehicle. In support of this argument, the plaintiff pointed to the request *via* e-email made to it by the insurance broker. The plaintiff asserted the e-mail satisfied the statutory requirements for a request for UIM coverage in an amount less than the bodily injury limit as provided in Section 1734. The defendant countered that the coverage amount requested by the broker for the reduced UIM coverage was not valid under Section 1734 because it was not a written request by the named insured.

The federal district court found that the "e-mail request made by the broker was not a valid request under the Pennsylvania MVFRL under [Section]

1734 to limit the amount of UIM coverage on each vehicle to $ 500,000.00[.]"

***Hinchey***, 464 F. Supp. 2d at 429. The court opined:

>        The broker's e-mail requested a number of changes to the policy at issue, e.g. deletion of vehicles, addition of a covered vehicle, request to amend building and personal property coverage. Among these requests was a change in UIM coverage to $ 500,000.00. The bodily injury liability limit was $ 1,000,000.00. But, it is undisputed that neither a corporate officer nor a designated employee sent a written request to the broker or the insurer requesting UIM coverage in an amount less than the bodily injury liability limit.
>
> …
>
>        Although this Court found that the broker was the agent of the named insured, no corporate officer nor designated employee of the named insured corporation sent a written request to either the broker or the insurer requesting UIM coverage less than the bodily injury limits. Even assuming that the broker was authorized to request UIM coverage in an amount less than the bodily injury limit, [Section] 1734's requirements cannot be satisfied without a writing by the named insured, not the named insured's agent.

***Id.***, at 435 (citations and record citations omitted).

Here, Employer's controller, Hinnenkamp, was authorized to handle all insurance matters for the company. Joint Statement of Undisputed Material Facts, 9/6/2018, at ¶ 5. Hinnenkamp specifically requested $1,000,000 in bodily injury liability coverage, and selected the option of $35,000 in UIM coverage and submitted it to the insurance broker. The original 2007 policy was thereafter issued in accordance with the Employer's selections. The next year, Hinnenkamp again worked with the insurance broker to renew the policy, which included the previously established $35,000 UIM coverage. Unlike in ***Hinchey***, the evidence establishes the Employer's corporate officer,

Hinnenkamp, sent a written request to the broker requesting UIM coverage less than the bodily injury limits.

A corporation like employer cannot act except through its agents. **See Walacavage v. Excell 2000, Inc.**, 480 A.2d 281, 284 (Pa. 1984). Since there is no dispute that Hinnenkamp was a duly appointed agent for employer in procuring insurance, the established facts of record are fatal to the Beaches' claim.

Furthermore, the December 2008 e-mail sent from the broker to Navigators merely reflected the numerous errors on the declaration page for the renewed policy. The email was not an original document requesting insurance coverage like in **Hinchey**. Therefore, **Hinchey** is factually distinct and not persuasive, and we decline to apply it here. Accordingly, the Beaches' first argument fails.

In their second argument, the Beaches claim the court erred in granting Navigator's motion for summary judgment because there remained a genuine issue of material fact concerning whether Navigators acted in bad faith. **See** Appellant's Brief, at 19. They state that Navigators improperly relies on the sworn affidavit from prior defense counsel "in an effort to establish credibility and rebut the allegations of bad faith[,]" but pursuant to the rule of **Nanty-**

***Glo Borough v. American Surety Co.***, 163 A. 523 (Pa. 1932),[2] "the reasonableness of the alleged offer is for the jury to decide." Appellant's Brief, at 20.

"Bad faith" has been defined as "any frivolous or unfounded refusal to pay proceeds of a policy." ***Terletsky v. Prudential Property and Cas. Ins. Co.***, 649 A.2d 680, 688 (Pa. Super. 1994). The Pennsylvania legislature created a statutory remedy for an insurer's bad faith in acting upon an insured's claim. ***See*** 42 Pa.C.S.A. § 8371.[3]

---

[2] "The ***Nanty-Glo*** rule prohibits summary judgment where the moving party relies exclusively on oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genuine issue of material fact except where the moving party supports the motion by using admissions of the opposing party or the opposing party's own witness." ***Lineberger v. Wyeth***, 894 A.2d 141, 149 (Pa. Super. 2006) (citation and quotation marks omitted). ***See also*** Pa.R.C.P. 1035.2, Note.

[3] Section 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371.

In ***Rancosky v. Wash. Nat'l Ins. Co.***, 170 A.3d 364 (Pa. 2017), the

Pennsylvania Supreme Court held:

> [T[o prevail in a bad faith insurance claim pursuant to Section 8371, a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim. We further hold that proof of the insurer's subjective motive of self-interest or ill-will, while perhaps probative of the second prong of the above test, is not a necessary prerequisite to succeeding in a bad faith claim. Rather, proof of the insurer's knowledge or reckless disregard for its lack of reasonable basis in denying the claim is sufficient for demonstrating bad faith under the second prong.

***Rancosky***, 170 A.3d at 377.

Here, there can be no dispute that Navigators had a reasonable basis

for denying the Beaches' claim for coverage beyond $35,000, as we have

already determined the trial court did not err in concluding that the UIM policy

limit was $35,000. We therefore turn to the Beaches' claims based upon the

timeliness of Navigators's actions in dealing with their claims:

> [Navigators acted in bad faith by] (7) failing to promptly offer any payment to [the Beaches], (8) engaging in dilatory and abusive claims handling, (9) acting unreasonably and unfairly by withholding underinsured motorists benefits justly due and owing to [the Beaches], (10) subordinating the interests of its insured and those entitled under its insured's coverage to its own financial monetary interest and (11) causing [the Beaches] to expend money on the presentation of their claim.

***Id.***, at 28.

The Beaches argue that "[u]nreasonable delay in payment may also be

a basis for bad faith." ***Id.***, at 25. They state Navigators failed to communicate

- 15 -

with them and contrary to the affidavit of Navigators' former counsel, they have no record of a tendered payment in April 2014 by Navigators in the amount of the $35,000 UIM coverage. *See id.*, at 29. The Beaches contend Navigators' actions demonstrate it breached its duty of good faith to them "through conduct that promoted [Navigators'] self interest." *Id.* Lastly, they state if a tendered payment was made, it came four years after Navigators gave consent to settle in October 2010, and such a delay, in and of itself, would constitute bad faith. *See id.*, at 30.

In denying the Beaches relief regarding their bad faith claim, the trial court found the following:

> [The Beaches] allege that this Court erred in granting summary judgment on the Bad Faith claim because there were genuine issues of material fact and such an action violates *Nanty-Glo*. In reality, however, [the Beaches] provided no evidence to support their Bad Faith claim beyond conclusory assertions. While [the Beaches] did provide an August 1, 2013 letter sent to Navigators demanding the amount of $900,000, based on [the Beaches'] interpretation of Navigators' insurance policy, all other documents provided as exhibits in the Response show Navigators attempting to get information to resolve the case. The record clearly demonstrates that multiple times Navigators tendered policy limits of $35,000, based on what was, in fact, a correct interpretation of the policy, but [the Beaches] refused or ignored those offers. After the first refusal of the $35,000 limits, Navigators again tendered the limits without condition so [the Beaches] could continue their pursuit of the alleged higher $1,000,000 limits they claimed were in effect. Further, [the Beaches'] objections to this Court's consideration of the information that was provided is meritless as, for the most part, it was documentary in nature and therefore, outside the scope of the *Nanty-Glo*. [The Beaches] have simply provided no evidence of Navigators' bad faith dealings and the [a]ppeal should be denied on this matter.

- 16 -

Trial Court Opinion, 1/13/2020, at unnumbered 8-9 (record citations omitted).

We agree with the trial court's conclusion for several reasons. First, concerning the Beaches' ***Nanty-Glo*** assertion, they point to a document provided by Navigator, a May 2017 affidavit of Navigators' former counsel, Keith G. Gomer, Esquire. They contend the trial court violated the ***Nanty-Glo*** rule by relying on this affidavit in granting Navigators' motion. In the affidavit, Gomer averred the following, in pertinent part:

11. On March 27, 2014, per [counsel for the Beaches'] request, I forwarded to him a copy of the Navigators Policy issued to [Employer] and advised [counsel for the Beaches] that the Policy contained an Endorsement amending the UM/UIM coverage to $35,000 from $1,000,000. In my March 27, 2014 correspondence, I advised [counsel for the Beaches] that I would be confirming with the Navigators claim professional assigned to the UIM/UM claim that the copy of the Policy being provided was complete and contained all of the terms and conditions of the Policy.

12. Within the next seven to ten days after my March 27, 2014 correspondence, I had an opportunity to speak with the claims professional assigned by Navigators to the case. I then advised [counsel for the Beaches] in a phone call that Navigators confirmed the UM/UIM limit available under the Policy issued to [Employer] was $35,000.

13. During the conversation referenced in subparagraph (12) above, I tendered to [counsel for the Beaches] … the $35,000 limit of liability available under the UIM/UM coverage issued by Navigators to [Employer].

14. In response to my verbal tender of the $35,000 UIM limits available under the Navigators issued to [Employer], [counsel for the Beaches] responded during the call by rejecting Navigators offer of the $35,000 policy limits to resolve the Beach UIM claim.

Motion for Summary Judgment of Navigators Insurance Company to Plaintiff's Complaint (Count III) – Statutory Bad Faith, 4/2/2019, at Exhibit E.

- 17 -

It merits mention that pursuant to the ***Nanty-Glo*** rule, "[t]estimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the factfinder." ***Penn Center House, Inc. v. Hoffman***, 553 A.2d 900, 903 (Pa. 1989). "If, however, the moving party supports its motion for summary judgment with admissions by the opposing party, ***Nanty-Glo*** does not bar entry of summary judgment." ***DeArmitt v. N.Y. Life Ins. Co.***, 73 A.3d 578, 595 (Pa. Super. 2013) (citation omitted).

Here, the Beaches ignore the fact that the trial court did not rely solely on the Gomer affidavit in reaching its conclusion. In addition to the affidavit, there was various documentary evidence, which supported the court's finding that Navigators attempted to get information to resolve the case and tendered payment to the Beaches. Mostly notably was the joint statement of undisputed material facts, in which the Beaches admitted the following: "Navigators **has previously tendered** to [the Beaches] the UIM limit it maintains is owed under the Policy - $35,000." Joint Statement of Undisputed Material Facts, 9/6/2018, at 4, ¶ 23 (emphasis added).

Additionally, in the October 23, 2017 letter from Navigators' present counsel to the Beaches' counsel, Navigators' counsel stated:

> As you will recall, at the recent oral argument hearing on Navigators['] Motion for Summary Judgment, [the trial judge] suggested that Navigators **again tender** the $35,000 UIM limit under the [Employer] Policy (the "Policy") to [the Beaches]

subject to a full Reservation of Rights by Navigators. These limits were previously tendered to [the Beaches] but were rejected. *See* Affidavit of Keith G. Gomer, enclosed herewith.

Motion for Summary Judgment of Navigators Insurance Company to Plaintiff's Complaint (Count III) – Statutory Bad Faith, 4/2/2019, at Exhibit F (emphasis added).[4] Navigators also presented the October 17, 2017 check that it issued to the Beaches in the amount of $35,000.00. ***See id.***, at Exhibit G.

Furthermore, in the Beaches' response to Navigator's motion to summary judgment, they included Gomer's March 27, 2014 email, referenced in his affidavit, in which Gomer stated he had attached the Navigators insurance policy issued to Employer, that the policy contained an endorsement amending the UM/UIM coverage to $35,000 from $1,000,000, and that he was going to confirm with the Navigators claim professional assigned to the UIM/UM claim that the copy of the policy being provided was complete and contained all of the terms and conditions of the policy. ***See*** Plaintiff's Response to Defendant's Motion for Summary Judgment, 4/29/2019, at Exhibit A.[5]

_____

[4] The Beaches do not take issue with the language in this letter.

[5] The court also indicated it relied on the following: Plaintiff's Response to Defendant's Motion for Summary Judgment, 4/29/2019, at Exhibits C (an August 1, 2013 letter from the Beaches' counsel to Navigator's former counsel stating he sent medical records and the vocational expert report, and was demanding $900,000.00 from the policy), D (a May 29, 2013 letter from counsel for the workers' compensation insurance carrier for Employer to the Beaches' counsel regarding the benefits paid to Kevin Beach, and notifying that the workers' compensation carrier is affirming its subrogation rights, on any recovery, which would include any UM/UIM recovery that may be made),

Accordingly, the Beaches have not demonstrated the court violated the *Nanty-Glo* rule in granting Navigators's motion for summary judgment.

Second, as noted by the trial court, the Beaches' bad faith argument largely amounts to conclusory allegations as they failed to provide any evidence to support their claim. The Pennsylvania Supreme Court has previously stated:

> Allowing non-moving parties to avoid summary judgment where they have no evidence to support an issue on which they bear the burden of proof runs contrary to the spirit of [Pennsylvania Rules of Civil Procedure] 1035. We have stated that the mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial. We have a summary judgment rule in this Commonwealth in order to dispense with a trial of a case (or, in some matters, issues in a case) where the party lacks the beginnings of evidence to establish or contest a material issue.… Forcing parties to go to trial on a meritless claim under the guise of effectuating the summary judgment rule is a perversion of that rule.
>
> …
>
> Thus, we hold that a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor.

***Ertel v. Patriot-News Co.***, 674 A.2d 1038, 1042 (Pa. 1996) (citation and quotation marks omitted). ***See also InfoSAGE, Inc. v. Mellon Ventures, L.P.***, 896 A.2d 616, 625-626 (Pa. Super. 2006).

---

and E (a November 10, 2009 letter from the insurance broker for Employer to the Beaches' counsel which included the requested auto policy declaration information). ***See*** Trial Court Opinion, 1/13/2020, at unnumbered 8.

Here, for instance, the Beaches' claim lacked "the beginnings of evidence" concerning how Navigators engaged in dilatory and abusive claims handling, and subordinated the interests of its insured and those entitled under its insured's coverage to its own financial monetary interest. *Ertel*, 674 A.2d at 1042.

Moreover, they allege that Navigators had given consent to settle the matter in October 2010, and that because Navigators purportedly waited until 2014 to tender payment, the delay was evidence of bad faith. This argument fails because the Beaches never presented evidence or pointed to a part of certified record that supports the notion that Navigators was willing to settle approximately 18 months after the accident.

Additionally, the Beaches relied on one document as evidence of bad faith, which was an August 1, 2013 letter from their counsel to Navigator's former counsel, stating:

> I had called you on July 16, 2012, and left you a message regarding the above-captioned uninsured motorist claim, to which no response was ever received. On August 17, 2012, we sent to your attention all of client's medical records. On December 12, 2012, we sent to your attention our Vocational Expert report. On March 6, 2013, I sent you a letter asking you to contact me, to which I have yet to receive a response.

> Kindly contact me regarding this uninsured motorist claim. Please be reminded that you do have the duty of good faith and fair dealing with regards to this claim, as it is an uninsured motorist. I wish to attempt to resolve this matter without the need of protracted litigation but, even in spite of filing a Writ against your insured, we have yet to discuss this matter and obviously have yet to even receive an offer on this case.

At this time, my client has authorized me to demand $900,000.00 out of the $1,000,000.00 policy limits. I expect a response promptly.

Plaintiff's Response to Defendant's Motion for Summary Judgment, 4/29/2019, at Exhibit C. ***See*** Appellant's Brief, at 29.

However, without more, they have not demonstrated that Navigators's delay of eight or nine months in tendering payment after the Beaches made their demand constitutes by clear and convincing evidence that Navigators "did not have a reasonable basis for denying benefits under the policy" and that Navigators "knew or recklessly disregarded its lack of a reasonable basis in denying the claim." ***Rancosky***, 170 A.3d at 377. It merits mention that at that time, the UIM limit amount was still being debated by the parties and there was a significant disparity in what they believed was the correct amount. Therefore, the Beaches' second claim is unavailing.

Accordingly, we conclude the trial court properly determined there were no issues of material fact and Navigators was entitled to summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2020