Raymond D. KUSHNER and Denise F. Kushner, his Wife, William J. Kumpf, Jr., and Marilyn D. Kumpf, his Wife, Mary H. Waite, William R. Schaffer and Rita M. Schaffer, his Wife, Robert J. Ashcraft and Janet J. Ashcraft, his Wife, William G. Kunz and Joan Kunz, his Wife, Appellants,

v.

## BUTLER COUNTY AIRPORT AUTHORITY, Appellee.

Superior Court of Pennsylvania.

Submitted Oct. 3, 2000.

Filed Dec. 13, 2000.

Samuel J. Pasquarelli, Pittsburgh, for appellants.

Charles F. Flach, Butler, for appellee.

Before HUDOCK, MUSMANNO and HESTER, JJ.

HESTER, Judge:

¶ 1 Raymond D. and Denise F. Kushner, William J. and Marilyn D. Kumpf, Mary H. Waite, William R. and Rita M. Schaffer, Robert J. and Janet J. Ashcraft, and William G. and Joan Kunz, appeal from the November 24, 1999 order entered in the Butler County Court of Common Pleas. Since, upon remand, the trial court has failed to heed our directive and implement the guidelines of the Federal Aviation Administration ("FAA") with regard to gate clearance and has failed to facilitate the property owners' use of the gateway by requiring its electrification, we are constrained to reverse.

¶ 2 This is the second appeal in continuing litigation that began ten years ago between the Butler County Airport Authority ("Authority") and the adjacent property owners, referred to as Appellants herein. At one time, all the parties' land was held in common ownership, and the original owner operated a small, private airport on part of the land. That original owner sold single lots of land to Appellants for single family residences and retained the remainder of the land for use as an airport. The original owner dedicated a fifty-foot strip of land on the parcel as a taxi-strip to be used by adjacent property owners to access the runway. Thereafter, the Authority acquired the land burdened with the easement and continued to operate the airport. In an earlier memorandum filed by this Court on November 16, 1993, we recited the following relevant facts.

This case involves a property dispute between Appellants Raymond D. Kushner, et al., and the Butler County Airport Authority ("Authority"). Appellants live on property bordering the Butler County Airport. They own pri-

vate airplanes, which they keep in private hangars just as one would keep an auto in a garage. The Authority granted to Appellants an easement to use a grassy 50–foot wide path, characterized as a "taxi-strip," located on airport property. To access the airport runway, Appellants drive their planes from the hangar, down the easement, and onto a paved path which in turn leads to the runway itself.

Appellants and the Authority entered into litigation which need not be recounted here. To terminate this litigation, the parties entered into a consent agreement dated February 18, 1992, which reads in relevant part as follows:

4. If a perimeter fence is erected by the Defendant which would traverse the Plaintiffs' right of way, Defendant must install and maintain a gate of sufficient width at the place of the current easement, to accommodate Plaintiffs' full use of their entire easement. *The gate must be equal to or better than the minimum standards or recommendations of the Federal Aviation Administration* or Pennsylvania Bureau of Aviation, or their successors. Defendant will consult with Plaintiffs' representative prior to the design of the gate in question.

If the Plaintiffs desire to improve upon the gate selected by Defendant, any design must be approved by Defendant (which approval will not be unreasonably withheld) and the entire expense borne by the Plaintiffs.

The Defendant shall have the responsibility for the design of the gate installed.

After entering into the consent decree, the Authority constructed a manual sliding gate across the easement. The gate opens only to the edges of the 50–foot–wide easement itself. The Authority also constructed a perimeter fence roughly parallel to the easement, and set back approximately 10 to 12 feet from one edge of the easement.[1]

---

1. A simplified description of the property follows. The grassy easement runs north to south. Appellants' private property lies east of the easement. The easement ends at its southernmost point, where it intersects at a "T" with a paved airport taxiway running east to west. The perimeter fence runs parallel to the grassy easement, approximately 10 to 12 feet to the west. The gate intersects at a 90–degree angle with the fence, and runs across the grassy easement, parallel to the paved airport taxiway. The fence then continues from the eastern edge of the gate onto property which is not at issue here. Thus, if the gate did not exist, the fence would have blocked Appellants' easement altogether. After driving down the grassy easement and through the gate, Appellants must immediately make a 90–degree right turn onto the paved road to reach the runway. According to Appellant William J. Kumpf Jr., this maneuver is difficult but not impossible. (Notes of Testimony, 6/9/97 at 22–23, R.R. 55a–56a).

Briefly stated, Appellants argue that the Authority violated the consent agreement by constructing the gate and fence where it did. Specifically, Appellants contend that Federal Aviation Administration (FAA) guidelines apply to the gate and fence, and that those guidelines require 44.5 feet of object-free clearance on either side of the center line of the easement, or 89 feet in total. (R.R. 271a) The gate, even when fully open, provides only 25 feet of clearance on either side of the center line of the easement. The fence, located 10 to 12 feet from the center line of the easement, provides only 35 to 37 feet of clearance on one side of the easement. The lack of clearance concerns Appellants in part because they are entitled to keep "Group One" airplanes on their property, which have a maximum wingspan of 49 feet. An airplane of this size would have only six inches of clearance on either side of the gate. Appellants do not currently own planes of this size.

Believing that the Authority had violated the consent decree, Appellants filed a Petition for Contempt. The trial court held a non-jury hearing on this

matter, and denied the petition. The court concluded that FAA clearance regulations do not apply because the easement is not an FAA-regulated "taxiway." (Trial Court opinion, 8/22/97, at 2.)

On October 30, 1997, the court awarded the Authority approximately $5,000.00 in attorneys' fees and costs on the ground that "[Appellants] were attempting to violate the Order by claiming expanded right of way by their erroneous interpretation of the language of the Order." (Trial Court Opinion, 10/30/97 at 1–2). [Appellants filed an appeal.]

*Kushner, et al. v. Butler County Airport Authority*, 734 A.2d 445 (Pa.Super.1998) (unpublished memorandum) (emphasis in original).

¶ 3 In that appeal, we construed the consent order in the same light as we would any other contract. We ascertained the intent of the language and looked to the plain meaning of the words in the written agreement. *See Dieter v. Fidelcor, Inc.,* 441 Pa.Super. 215, 657 A.2d 27, 29 (1995); *PBS Coal, Inc. v. Hardhat Mining,* Inc., 429 Pa.Super. 372, 632 A.2d 903, 905 (1993). We noted that the consent agreement provided that if the Authority erected a fence across Appellants' easement, it was legally bound to install a gate which accommodated Appellants "full use of their entire easement," and which met or exceeded the minimum FAA standards or recommendations. *See Kushner, et al. v. Butler County Airport Authority, supra.* We did not focus on whether the easement was an FAA-approved taxiway, but upon whether the Authority agreed to construct a gate over the easement according to the FAA's object-free clearance standards. Clearly, the gate structure, itself, was necessary to create an opening, or gateway, which would permit Appellants' use of their easement. We determined that under the relevant agreement, the parties did intend that FAA regulations regarding clearance would apply to any gate built by the Airport over property owners' easement. We reversed the trial court's decision that held to the contrary. We remanded for enforcement of the property owners' contempt petition.

¶ 4 On remand, the trial court directed the Authority to widen the gate opening but determined that the object-free area would be seventy-five feet rather than the FAA mandated eighty-nine feet. It also concluded that a manual, rather than automated gate, could be installed by the Authority unless the property owners agreed to pay for one-half of the cost of automating the gate. Further, it ordered the Authority to pay $13,218.53 in attorneys' fees that were incurred by Appellants. The property owners filed this appeal.

¶ 5 Appellants present the following issues for review.

A. IS THE RELEVANT OBJECT–FREE AREA MANDATED BY FEDERAL AVIATION ADMINISTRATION GUIDELINES 75 FEET RATHER THAN 89 FEET?

B. MAY THE OBJECT–FREE AREA BE MEASURED WITHOUT REFERENCE TO ANY CENTER LINE?

C. SHOULD THE APPELLANTS BE REQUIRED TO PAY FOR A PORTION OF THE COST OF ELECTRIFICATION OF A GATE INSTALLED BY APPELLEE?

Appellants' Brief at 5.

¶ 6 It is well-settled that the owner of a dominant estate has free and full use of the entire easement granted, and neither party may unreasonably interfere with the other's use. *See Kao v. Haldeman,* 556 Pa. 279, 728 A.2d 345 (1999). The subsequent purchaser of land, who has notice of an existing easement, takes land subject to that easement. *Palm Corporation v. Commonwealth of Pennsylvania, Department of Transportation,* 688 A.2d 251 (Pa.Cmwlth.1997). Herein, it is undisputed that the Authority

was aware of the easement to the property owners.

■ ¶ 7 The property owners have demonstrated that under FAA regulations, which we have held were intended to be incorporated, the gate clearance should be eighty-nine feet rather than the arbitrary seventy-five feet ordered by the trial court. As dominant estate holders, Appellants have the right to the use of an unobstructed easement. It necessarily follows that the Authority may not erect any structure on the soil of or so close to the easement as to interfere, even to the slightest degree, with its unobstructed use. Therefore, we instructed the trial court, upon remand, to apply the proper FAA mandated guidelines. Instantly, the Authority has presented no information which would lead us to re-evaluate that directive. The consent decree clearly requires that FAA guidelines apply to the gate. The erection of a gate was necessitated solely by the Authority's unilateral decision to erect a fence over Appellants' easement, which consists of a grassy taxiway granting Appellants' access to the Authority's runways.

¶ 8 The Authority's position that the grassy easement is not a true taxiway and therefore not subject to FAA restrictions is irrelevant. It ignores the language in the consent decree and the obvious purpose of the grassy strip. Moreover, its argument that the minimum clearance created satisfactory access for the planes *currently* owned by the adjacent property owners, likewise, is irrelevant. Further, the Authority's plea that its budget cannot support the expenditures proposed is a non sequitur. The Authority voluntarily opted to erect the perimeter fence and voluntarily entered into the consent decree with the adjacent property owners to protect the existing easement which the fence threatened to jeopardize. Appellants should not be forced to settle for the bare minimum compromise advanced by the Authority and adopted by the trial court. Appellants have embarked upon no course

of action that has threatened to impede or thwart the Authority's present or future ability to operate the airport. Likewise, no affirmative action taken by the Authority will be permitted to thwart the entitlements of its adjacent property owners to access the airport.

■ ¶ 9 The property owners also argue, given their evidence, the Authority should be required to make its gate automatic. That evidence includes that *two men* are needed to open a fifty-foot manual fence and that the airplane engine needs to be turned on and off in order to exit the plane and open the gate. While operation of the manual gate may be viewed as a mere inconvenience to some adjacent property owners, it represents a complete denial of access to others since some of the pilots are women, who are physically incapable of opening the manual gate. Moreover, a pilot operating his plane alone also would be denied reasonable use of his easement by the manual gate.

¶ 10 Given our prior decision, we reiterate that the gate clearance must be the eighty-nine feet required by FAA regulations. Moreover, given the fact that affirmative action by the Authority has obstructed the easement given to the property owners, it is required to render the gate usable for *all* easement holders. Specifically, the Authority must provide unobstructed ease of access to the easement for *all* easement holders. The Authority is not permitted to prevent reasonable use of the easement by the easement holders. While the Authority argues that automation is an upgrade for which property owners are required to pay under the agreement, it appears this position ignores the prior matter of whether it has obstructed the easement by erecting a structure that prevents use of the easement by the dominant estate holders. Clearly, by expecting easement holders to access the airport through a narrow gate that cannot be opened by a single pilot, the Authority has substantially interfered with

Appellants' use and enjoyment of their easement. Thus, the automation is not an *upgrade* but a necessity so that Appellants may avail themselves of the "full use of their easement" as provided by the consent agreement.

¶ 11 Accordingly, we are constrained to reverse, in part, the trial court's November 24, 1999 order.[1] Case remanded for entry of an order consistent with this adjudication. Jurisdiction relinquished.

1. Neither party disputes the $13,218.54 award of counsel fees, which the parties stipulated to be the amount owed to the property owners.