J-A27005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JACEK WOLNIKOWSKI AND MARZENA D. WOLNIKOWSKI | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMANDA M. PERKO AND MATTHEW S. BALSAVAGE | : | No. 774 MDA 2023 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered April 25, 2023
In the Court of Common Pleas of York County Civil Division at No(s):
2018-SU-00076

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED MAY 07, 2024**

Amanda M. Perko and Matthew S. Balsavage (the Balsavages)[1] appeal

from the order, entered in the Court of Common Pleas of York County, granting

a judgment notwithstanding the verdict (JNOV) in favor of Appellees, Jacek

Wolnikowski and Marzena D. Wolnikowski (the Wolnikowskis), and ordering

the Balsavages to remove any portion of their fence installed:  (1) within a

utility easement and (2) within an area that would constitute the clear sight

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Although at the time the lawsuit was instituted Amanda was the sole owner of the 1270 Klines Run Road property, in June 2018, Amanda conveyed an undivided one-half interest to Matthew, her now-husband.  Since Amanda has taken Matthew's last name, we will refer to the couple as the Balsavages. Additionally, Matthew was added as an additional defendant to the matter on January 22, 2020.

triangle of the intersection of the parties' common driveway with Klines Run Road. After careful review, we affirm.

The instant case involves a property dispute between the Balsavages (Defendants/Appellants) and the Wolnikowskis (Plaintiffs/Appellees), adjoining landowners who reside at 1260 and 1270 Klines Run Road in Lower Windsor Township, York County, respectively. The parties, who share a common driveway,[2] live in "Section III" of the Lauxmont Farms Subdivision (Subdivision), a planned community. The Subdivision and its lots are subject to covenants, easements, plan depictions, and notes recorded in the York County Recorder of Deeds Office.

In December of 1993, a final plan for the Subdivision was approved by Lower Windsor Township identifying home-sites and certain easements. In February 1994, the Subdivision's owner recorded a General Declaration[3] with

---

[2] The common driveway accesses and serves four properties, including Plaintiffs' lot and Defendants' lot. The main entrance to the driveway is from Klines Runs Road. **See** N.T. Bench Trial, 6/9/20, at 138.

[3] Part Three, Article I, Subsections 2(b)(5) and (d) of the Subdivision's General Declaration state that an architectural design and review board will "[e]nsur[e] that any . . . structure complies with the provisions of these covenants [and e]ach . . . fence shall be made only after the proposed plans, specifications[,] and construction schedule shall have been submitted to and approved by the Review Board." Lauxmont Farms Residential Community General Declaration, Part Three, Article I, §§ 2(b)(5), (d). "Structure" is defined in the Declarations as "any . . . object . . . which is erected or shaped on the property, including but not limited to [] fences[.]" **Id.** at Part I, Article I, § 1(e). However, the Subdivision's architectural review board "does not exist and has not functioned for a timeframe that predates the Balsavages' purchase of their property." Opinion Granting Plaintiffs' Request for Relief, Findings of Fact, 7/20/22, at 9.

the York County Recorder of Deeds Office, incorporating a final Subdivision plan and subjecting the Subdivision to certain covenants, restrictions, easements, and affirmative obligations (collectively, Covenants). The General Declaration specifies that "[t]he easements [within the Subdivision] shall be for the use and benefit of owners of the Residences and their families, occupants[,] and household invitees." Lauxmont Farms Residential Community General Declaration, Part Three, Article III, § 2(b)(ii). Finally, the General Declaration provides that the provisions of the Covenants "shall be given full force and effect notwithstanding the existence of any zoning ordinance which allows a less restricted use of the Lauxmont Farms Residential Community." *Id.* at Part Five, Article I, § 5. Because the Covenants were recorded with the land and set forth in the parties' respective deeds, the parties were aware of them prior to purchasing their properties. *See, e.g., Jones v. Sedwick*, 117 A.3d 709, 711 (Pa. 1955).

The sole means of ingress and egress to the parties' properties is the 32-foot-wide common driveway (Utility Easement) that is accessed from Klines Run Road.[4] *See* N.T. Non-Jury Trial, 7/14/20, at 14 (Marzena

---

[4] A "home-site driveway easement" branches off of the common driveway/utility easement "at a point on Defendants' lot which then enters Plaintiffs' lot and serves as Plaintiffs only ingress and egress to/from Plaintiffs' home, on which is situated a minimum paved cartway no less than 10 [feet] but not more than 15 [feet] in width." *See* Plaintiffs' Pretrial Memorandum, 1/9/20, at 2-3. Thus, the Balsavages own the subservient estate over which the Wolnikowskis exercise a dominant estate. Notably, "the owner of a dominant estate has free and full use of an entire easement granted, and
*(Footnote Continued Next Page)*

Wolnikowski testifying purpose of common driveway "is for ingress and egress" for the Subdivision properties). A 12½-foot-wide paved cartway[5] is centered on the common driveway. Additionally, a 30-foot water drainage easement traverses the parties' properties and intersects with the common driveway/utility easement.

In the summer of 2017, Perko installed a 2,250-foot wooden three-board fence around her property, as well as additional sections of the fence that run approximately one-and-one-half feet off of and along the common driveway and two feet from the Plaintiffs' property line. On January 11, 2018, the Wolnikowskis filed an action against the Appellant alleging that the fencing erected on the Balsavages' property, but adjoining their common driveway/utility easement, encroached on the Wolnikowskis' easements and interfered with clear sight triangles.[6] Plaintiffs also claimed that the

_____

neither the dominant estate owner [n]or the subservient estate owner may unreasonably interfere with the other's use." **Kuchner v. Butler County Airport Auth.**, 764 A.2d 600, 603 (Pa. Super. 2000).

[5] Cartway is defined as "the actual road surface area from curb[]line to curb[]line which may include travel lanes, parking lanes, and deceleration and acceleration lanes." When there are no curbs, the cartway is that portion between the edges of the paved or hard surface width." www.lawinsider.com/dictionary/cartway (last visited 1/10/24).

[6] "A clear sight triangle is the proposed area within which the view of a driver in a typical vehicle at a driveway or road intersection is not to be obstructed in either driveway while stopped in the driveway or road." https://www.thelanddevelopmentsite.com/what-is-a-clear-sight-triangle/ (last visited on 1/26/24).

Defendants "damaged the paved cartway of Plaintiffs' home-site driveway easement during the erection of [their] fence." Plaintiffs' Pretrial Memorandum, 1/9/20, at 3. Finally, Plaintiffs complained that Defendants had also posted multiple "No Trespassing" signs and security cameras along the fence line, in violation of the Covenants. *Id.*

Plaintiffs' complaint avers that the parties' properties are "subject to certain covenants[,] easements[,] plan depictions[,] and notes recorded in York County Record Book 830, at page 903, and as amended and recorded at York County Record Book 887, page 833, and as noted in York County Plan Book MM, page 690." Plaintiffs' Complaint, 1/11/18, at 2. Plaintiffs sued, both in equity and in law, as Subdivision owners, contending that Defendants failed to comply with the Subdivision's Declarations and asked that Defendants be enjoined from: constructing or maintaining the fencing that violates the Covenants; encroaching on Plaintiffs' common driveway easement rights; and, permanently constructing or maintaining the signage, cameras, and other structures violating the Covenants.

A bench trial was held on June 8-9, 2020,[7] before the Honorable Clyde W. Vedder. Four witnesses testified at the trial, including Plaintiffs' expert, Joel Young, and Defendants' expert, James Holley, each of whom issued an expert report. Plaintiffs' expert found that the fencing was installed less than

---

[7] Due to the COVID-19 pandemic, on March 19, 2020, the court continued the non-jury trial to June 2020, in accordance with our Supreme Court's March 18, 2020 order declaring a general statewide judicial emergency until April 14, 2020.

7 feet-9 feet from the centerline of the paved common driveway, or approximately 1 foot 5 inches from the edge of the paved surface, *see* Plaintiffs' Exhibit P-21b, and that "in [his] professional opinion, [] the fence clearly impacts the common driveway easement and utility easement and water [drainage easement and has] also adversely affected the intended purpose of the easements." N.T. Bench Trial, 6/8/20, at 95. Moreover, Young testified that "the recorded land development plans [] noted [that] nothing shall be placed . . . or set within any area labelled easement that would adversely affect its intended task." *Id.* at 89. The Balsavages defended the case by arguing that not only was there no "set-back" requirement for fencing erected in the Subdivision, and that their fence was "within the limits of the common driveway/utility easement," Defendants' Exhibit AA2, but also that Part Three, Article III, Section 2(b)(iii) of the General Subdivision Declaration only provides a *construction* limitation or exclusion for common driveway easements requiring that the paved cartway in the center not exceed 15 feet.[8]

On July 20, 2022, the court entered a verdict directing Defendants to remove: (1) any portion of their fence installed within the area that would

_____

[8] This exact language of this subsection provides as follows:

> Owner also declares and reserves such additional easements as may be required for construction, maintenance and support of the private common driveways.

Lauxmont Farms Residential Community General Declaration, Part Three, Article III, Section 2(b)(iii).

- 6 -

constitute the clear sight triangle of the street intersection of the common driveway with Plaintiffs' home-site driveway (not to exceed twenty feet); (2) any portion of their fence installed within the Water Drainage Easements; (3) any apparatus consisting of poles, solar power cells, and/or cameras within twenty feet of the Utility Easements; (4) the "No Trespassing" signs posted along the fence; and (5) the rebar metal tie rod stakes installed along the fence or in lieu of the wooden fencing. *See* Decision, 7/20/22, at 1-2. The court found the language of the easement was clear and, thus, controls. *See* Opinion Granting Plaintiffs' Request for Relief, 7/20/22, at 19.

On July 29, 2022, Plaintiffs filed a post-trial motion claiming that the trial court erred by not ordering that the Defendants also remove that portion of their fence within the 20-foot utility easement[9] and also by not mandating Defendants remove any portion of their fence installed within *any* clear sight triangle, not just those portions limited to the intersection of the common driveway with Plaintiffs' home-site driveway. *See* Plaintiffs' Post-Trial Motion, 7/29/22, at 1-5. Defendants filed a brief opposing Plaintiffs' motion arguing that Plaintiffs failed to establish the actual location of the utility easement within the cartway easement, and, as a result, the court could not find that any of their fencing was within that easement. *See* Defendants' Brief in

---

[9] The court found that Part Six, Article I of the General Declaration provides that easements "shall be interpreted and applied in conjunction with the ordinances of Lower Windsor Township." Opinion Granting Plaintiffs' Request for Relief, 7/20/22, at 24.

Opposition to Plaintiffs' Motion for Post-Trial Relief, 8/31/22, at 2. More specifically, the Defendants allege that because there was no testimony regarding where the paved cartway was located relative to the larger[10] easement and utility easement, Plaintiffs cannot prove that the Defendants' fence encroached upon the utility easement. *Id.* at 3-4.

Following argument,[11] the court granted Plaintiffs' JNOV and ordered Defendants to: (1) remove any portion of the fence installed within the utility easement due to the unclear record with respect to the physical location of the easement relative to the fence and (2) remove any portion of the fence installed within the area that would constitute the clear sight triangle of the street intersection of the parties' common driveway with Klines Run Road. *See* Order Granting Plaintiffs' Motion for Post-Trial Relief, 4/25/23, at 1-2. The court's order further provides that the parties' engineers shall meet on-

_____

[10] In its brief in opposition to Plaintiffs' motion for post-trial relief, Defendants posited that there are two smaller easements centered in a larger easement and that the "location of the utility easement would be found by determining the exact center of the larger easement of 32 feet." *Id.* at 3.

[11] In its order for post-trial relief, the court noted the following:

> The [c]ourt determined after additional reflection that it need not review the transcript prior to ruling on the pending motion. If Plaintiffs are truly inclined to seek a transcription of the record of the subject proceedings and its accompanying exhibits, they are to contact and make such a request to Court Administration at the York County Judicial Center.

Order Granting Plaintiffs' Motion for Post-Trial Relief, 4/25/23, at 2 ¶ 3. It does not appear that Plaintiffs contacted and requested the subject transcript from the post-trial proceedings.

site to determine and agree upon what portions of the fence, if any, are installed within the easement and within the clear sight triangle area and discuss reinstallation in conformity with set-back regulations and ordinances. *Id.* at 2. Finally, the court directed that if the parties' cannot agree whether any portions of the fence fall within the easement and/or clear sight triangle area, the parties shall have the court make such a determination. *Id.* at 1-2.

Defendants filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, Defendants present the following issues for our consideration:

A. Whether the [trial] court erred in reopening the record post-trial and post-decision to allow the Wolnikowskis another opportunity to meet their burden regarding whether fencing was installed within the [u]tility [e]asement?

B. Whether the [trial] court erred in reopening the record post-trial and post-decision to allow the Wolnikowskis another opportunity to meet their burden regarding whether fencing was installed within the clear sight triangle of the street intersection?

C. Whether the [trial] court erred in allowing the Wolnikowskis to enforce a 2012 Zoning Ordinance without notice of involvement of the municipality, in violation 53 P.S. § 10617?[12]

Appellants' Brief, at 4-5.

_____

[12] Section 10617 of the Pennsylvania Municipalities Planning Code (MPC) permits a private cause of action to enforce an alleged violation of any ordinance enacted under the MPC, including a subdivision and land development ordinance. *See Smith v. Ivy Lee Real Estate, LLC*, 165 A.3d 93 (Pa. Cmwlth. 2017).

An easement may be created by express agreement, by implication, by necessity, or by prescription. ***Morning Call, Inc. v. Bell Atlantic-Pennsylvania, Inc.***, 761 A.2d 139, 142 (Pa. Super. 2000). Our review of a trial court's decision following a non-jury trial is limited to determining whether the trial court's findings of facts are supported by competent evidence and whether the trial court erred in applying the law. ***Landis v. Wilt***, 222 A.3d 28, 34 (Pa. Super. 2019). Our review regarding questions of law, however, is plenary and *de novo*. ***Ramalingam v. Keller Williams Realty Group, Inc.***, 121 A.3d 1034, 1048 (Pa. Super. 2015).

At trial, Plaintiffs' expert testified that, in his professional opinion, the Defendants' fence impacts the common driveway, and the utility and water easements. ***See*** N.T. Bench Trial, 6/8/20, at 95. Accordingly, by erecting the fence, the Defendants violated the Covenants. Moreover, Plaintiffs' expert testified that the common driveway "is not wide enough to accommodate two vehicles." ***Id.*** at 88. Thus, since the Defendants' fence, which was installed on both sides of the common driveway, is approximately 7' 9" from the centerline of the driveway, "[the fence] creates an adverse condition where one [of the two] vehicle[s] can actually have a problem passing because of the narrowness [and] one would have to back up or cause situations." ***Id.*** Most notably, however, Plaintiffs' expert testified that the fence was installed within the access and utility stormwater easements on the property.

Defendants' expert testified that he did not know exactly where the storm drainage easement was located relative to the ground and, therefore,

could not say whether the fence was situated inside of the drainage easement. *Id.* at 112-13. However, that expert did testify that Defendants' fence is installed within the perimeter of the 20-foot utility easement. *Id.* at 113. *See also id.* at 114 (Defendants' expert testifying, "The fence is in the common driveway easement. There is no question about that."). Defendants' expert also testified that he did not have an opportunity to look at Lower Windsor Township's land development or stormwater management ordinances. *Id.* at 117-18. In particular, the expert did not review section 513 of the township ordinance prohibiting the placement of structures within utility easements. Moreover, the expert concurred with the court that if two vehicles were trying to pass each other on the cartway, with only 16-feet of passage space, pedestrians would not be able to pass. *Id.* at 126 (expert stating, "Well, you need at least another 3 feet.").

Following argument on post-trial motions, the trial court amended its initial order, entered after the non-jury trial, now concluding "that the set[-]back modification provision[,] found at § 504 of the 2012 zoning ordinance and § 470-33 of the 2021 [Lower Windsor Township's Subdivision and Land Development Ordinance[(SALDO)] is not dispositive of the strict prohibition of structures within utility easements[; and **the court**] **overlooked the fence's location near Klines Run Road and its potential to implicate and impair the required sight triangle at the intersection of the** [**parties'**] **common driveway and Klines Run Road**." Order, 4/25/23, at 3-4 (emphasis added). We agree.

The Subdivision's plans, memorialized in York County Record book 830, page 911, indicate that common driveway easements shall be thirty-two feet wide for construction purposes, but the paving width shall not exceed fifteen feet. Defendants constructed the subject fence within two feet of their property line, which is within the construction easement.[13] N.T. Bench Trial, 7/14/20, at 44. Moreover, a 20-foot-wide utility easement sits within the parties' common driveway, along the side and rear boundary lines of each property in the community, which is "where all facilities and appurtenances necessary or incidental hereto or the transmission of electric are placed, as well as a thirty foot (30') Water Drainage Easement." Defendants' Post-Trial Motion, 7/29/22, at ¶ 7.

Based on the Subdivision's final plan, as well as the related Covenants (which include the relevant easements) in the General Declaration that prohibit anything being placed within the easements that would adversely affect its intended purpose, the court properly granted Appellees' post-trial motions and amended its original order to include removal of any portion of Appellants' fence located within the utility easement and within an area that would constitute the clear sight triangle of the intersection of the parties' common driveway with Klines Run Road. ***Starling v. Lake Meade Prop.***

_____

[13] At trial, the parties stipulated that the fence starts one-and-one-half feet from the edge of the road.

*Owners Ass'n*, 162 A.3d 327, 343 (Pa. 2017) ("It is beyond cavil in Pennsylvania that a property owner may use his property only in ways that do not interfere with the rights of the easement holder.")

The testimony shows that portions of the fence erected by the Defendants interferes with Plaintiffs' reasonable use of the easements for ingress and egress to the home-sites as per the final plan.  **See** Trial Court Opinion, 7/25/23, at 5 ("Appellants had actual and/or constructive notice of the [Subdivision's] Declaration . . . as [a] controlling document [] through the deed conveyance by which they became unit owners in the community."); *id.* ("By having joined a residential community, [Defendants] agreed to be under and subject to all [of its] covenants and conditions."); N.T. Bench Trial, 6/8/20, at 88 (Plaintiffs' expert testifying purpose of easement over common driveway is for ingress and egress to Subdivision's properties by residents). *See also Merrill v. Manufacturers Light and Heat Co.*, 185 A.2d 573, 575 (Pa. 1962) (intention of parties "is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made").

Order affirmed.[14]

---

[14] Because there is sufficient evidence supporting the trial court's post-trial motion order, without resorting to the applicability of township ordinances, we need not address the Balsavages' final claim involving the  provisions of the Lower Windsor Township SALDO.  We note that, in any event, such a claim
*(Footnote Continued Next Page)*

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 05/07/2024

---

would be within the exclusive jurisdiction of the Commonwealth Court. *See* 42 Pa.C.S.A. § 762(a)(4)(i)(8) (Commonwealth Court possesses exclusive subject matter jurisdiction of local, civil matters involving all actions or proceedings arising under any municipality planning or zoning code of the application, interpretation, or enforcement of any such local ordinance); *see also Smith v Ivy Lee Real Estate, LLC*, 249 A.3d 1148 (Pa. Super. 2021) (Table) (application of SALDO and claims regarding easements intertwined with zoning or planning ordinance disputes fall squarely within jurisdiction of Commonwealth Court).