J-A30028-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROBERT L. WAGNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD B. NORTON AND JEAN M. | : | |
| NORTON | : | |
| | : | |
| | : | No. 770 EDA 2025 |
| Appellants | : | |

Appeal from the Judgment Entered June 11, 2025
In the Court of Common Pleas of Bucks County Civil Division at No(s):
2022-03058-0

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

MEMORANDUM BY PANELLA, P.J.E.:　　　　　　　**FILED FEBRUARY 6, 2026**

Ronald B. Norton and Jean M. Norton[1] appeal from the judgment entered in the Court of Common Pleas of Bucks County in favor of Robert L. Wagner following a non-jury trial. After careful consideration, we commend the trial court for its comprehensive, thoughtful, and well-written decision, and we appropriately cite to its opinion dated May 23, 2025, in affirming its decision.

Norton and Wagner are neighbors with competing interests in a 1,980 square foot piece of property subject to an express easement that provides Wagner, the dominant estate owner, the sole means of accessing his residential property. The underlying dispute concerns a proposal by Norton,

---

[1] Although both Appellants were parties to the original action, only Ronald Norton appeared and testified at trial. For simplicity, we refer exclusively to Ronald Norton hereinafter.

the servient estate owner, to implement an electronic gate system, which would include two locked gates, on the portion of his property that is encumbered by Wagner's access easement. The trial court accurately summarized the factual and procedural history of the matter as follows:

Wagner owns property located at 3067 Sugan Road, New Hope, Pennsylvania [], which he purchased in February 1998. Norton owns property located at 3095 Sugan Road, New Hope, Pennsylvania [], which he purchased in May 1984, subject to the easement in question. Both properties are residential, and each includes a single family detached dwelling with related improvements.

The Wagner property is landlocked and does not have direct access to Sugan Road. The Wagner property maintains access to and from Sugan Road through an easement provided pursuant to a 1959 indenture [], which predates each party's ownership of their respective properties. The easement area consists of a gravel driveway that has been the sole existing driveway used to access the Wagner property since the execution of the 1959 indenture. The language of the easement assigns to Wagner the "free and uninterrupted use, liberty and privilege of passing in and along" the easement. [Exhibit P-3.]

The easement passes through multiple properties, including the Norton property. The easement extends across the back edge of the Norton property, measuring 16.5 feet wide and 120 feet long. The Norton property maintains its roadway access through a separate driveway directly to Sugan Road. [The easement does not include any language granting the owner of the Norton Property any access rights across the other properties over which the easement passes to reach Sugan Road.] The easement area is situated exactly at the border between the Wagner and Norton properties and is the least intrusive pathway across the Norton property.

* * *

No gates or posts existed over the easement area prior to Norton's installation, first, of two posts, followed by a gate in June of 2022. Wagner initiated this declaratory judgment action on June 30,

- 2 -

2022. Wagner requested, *inter alia*, a declaration that Norton's proposed gate installation would constitute a denial of Wagner's express easement rights. Norton filed preliminary objections on August 1, 2022, asserting that Wagner had not alleged a basis upon which relief could be granted because Norton offered to give Wagner a means to unlock the gate. On October 4, 2022, the [trial court] entered an order overruling Norton's preliminary objections. Norton subsequently filed a responsive pleading, consisting of an answer and new matter. Upon closure of the pleadings, both parties moved for summary judgment. The [court] denied both motions on July 5, 2023. [A] non-jury trial [was held] on October 23, 2024.

Initially, Norton had expressed an intent to have a single gate that would be secured by way of physical lock and key. That gate would have required those going to and from the Wagner property to exit their vehicles to unlock and relock the gate. According to Wagner's testimony at the October 2024 trial, Norton said to Wagner in June of 2022: "I'm going to put up a gate, I'll give you a combination; if anything happens back here, they're coming after you." [N.T. Trial, 10/23/24, at 22.] Norton then installed two [] wooden posts and a gate at the location where the easement first enters the Norton property. Norton testified at trial that he chained the initial gate open in 2022 to prevent it from closing in light of the legal question before the court.

Beyond the installation of the initial gate, Norton also sent Wagner a letter dated June 30, 2022, which stated:

> You may not tamper with or destroy any property boundary markers, boundary stakes, string lines, fence post, fences and gates. If you do, I will call the police and file a complaint against you. You have a deeded right of way to use the back of my property for transit to and from your property only. You may not park vehicles or equipment on this right of way for any reason. You may open and close the gate when you use the right of way. The gate must remain closed at all times.

[Exhibit P-7.]

At the time of trial, Norton testified concerning an updated proposal involving an electronic gate system with two [] locked gates. This updated proposal would include the use of a digital

keypad and combination code that could be accessed by drivers directly from their vehicle, along with a physical release pin to be used as a backup if the electronic system were to malfunction or if emergency services needed to bypass the locks.

On October 25, 2024, the court issued a memorandum decision and order, finding in favor of Wagner and declaring that Norton's plan for installing two [] locked gates across the easement area would constitute an unreasonable obstruction of Wagner's right to the "free and uninterrupted use, liberty and privilege of passage" along the easement and therefore violates Wagner's property rights.

Trial Court Opinion, 5/23/25, at 1-5 (unnecessary capitalization, footnotes, brackets, and record citations omitted).

Norton filed a timely motion for post-trial relief, which the court denied on February 27, 2025, following briefing and oral argument. On March 24, 2025, Norton filed a notice of appeal. Both Norton and the trial court have complied with Pa.R.A.P. 1925. **See** Pa.R.A.P. 1925(a), (b).

On appeal, Norton presents the following questions for our review:

1. Did the court commit an error of law by finding that [Norton's] proposed gates across the access easement constituted an unreasonable interference with [Wagner's] easement rights where the competent evidence established [Norton's] proposed gates amount to little or no inconvenience?

2. Did the court commit an error of law by interpreting the language of the easement to prohibit the installation of gates across the easement where said gates would not result in an unreasonable interference with [Wagner's] easement rights?

3. Did the court commit an error of law by finding that the proposed gates do not effectively afford [Norton] any protection or convenience where the competent evidence established that the gates will prevent trespassers from entering [Norton's] property, deter deer from entering [Norton's] property and prevent [Norton's] pets from leaving their property?

4. Did the court commit an error of law by requiring [Norton] to consider alternatives to installation of gates across an access easement, notwithstanding the fact that the competent evidence established that [Norton's] proposed gates do not constitute an unreasonable interference with [Wagner's] use of the easement?

5. Did the court commit an error or law by finding that a no trespass sign is adequate to accomplish [Norton's] goal of preventing trespassers from utilizing the access easement as said finding was not supported by competent evidence?

Appellants' Brief, at 4-6 (issues reordered for ease of disposition; unnecessary capitalization and trial court answers omitted).

In each issue, Norton challenges the trial court's determination that Norton's proposed gate system would unreasonably interfere with Wagner's easement rights. Our standard of review is well-established.

This Court's standard of review of a trial court's decision in a declaratory judgment action is narrow. Because declaratory judgment actions arise in equity, we will set aside the judgment of the trial court only where it is not supported by adequate evidence. The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion reasonably can be drawn from the evidence.

**Carolino East Brandywine, L.P. v. Brandywine Village Association**, 197 A.3d 1189, 1199 (Pa. Super. 2018) (citation omitted). We may affirm a trial court's decision to enter a declaratory judgment on any basis supported by the record. **See Nationwide Mut. Ins. Co. v. Catalini**, 18 A.3d 1206, 1211 n.6 (Pa. Super. 2011).

When reviewing a trial court's determinations in a non-jury trial in a declaratory judgment action, [this] Court gives great deference to the trial court's factual findings. It is within the trial court's exclusive province to determine the weight to be assigned the

- 5 -

testimony of witnesses; the court is free to believe all, part, or none of the evidence presented.

*Zurick v. Stella Cadente Investments, LLC*, 342 A.3d 704, 708 (Pa. Super. 2025) (citations omitted). "We consider evidence in a light most favorable to the verdict winner[, and] will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law." *Spolar v. Spolar Family Trust*, 326 A.3d 995, 1001-02 (Pa. Super. 2024) (citation omitted). Where an issue concerns a question of law, our standard of review is *de novo* and our scope of review is plenary. *See id.* at 1002; *Zurick*, 342 A.3d at 708.

"An easement is a right in the owner of one parcel of land by reason of such ownership to use the land of another for a special purpose not inconsistent with a general property in the owner." *Clements v. Sannuti*, 51 A.2d 697, 698 (Pa. 1947) (emphasis and citation omitted). A right of way is an easement, "which may be created by an express grant[,]" *Amerikohl Mining Co., Inc. v. Peoples Natural Gas Co.*, 860 A.2d 547, 551 (Pa. Super. 2004) (citation omitted), as occurred in the case *sub judice* through the execution of the 1959 indenture. *See* Exhibit P-3. "[T]he scope of an express easement must be determined in strict conformity with the intentions of the original parties as set forth in the grant of the easement." *McNaughton Properties, LP v. Barr*, 981 A.2d 222, 227 (Pa. Super. 2009) (citations omitted). "Where the grant of an easement is unrestricted, the grantee is given such rights as are necessary for the reasonable and proper enjoyment

of the thing granted." **_Zettlemoyer v. Transcontinental Gas Pipe_**, 657 A.2d 920, 924 (Pa. 1995) (citations omitted).

"It is well-settled that the owner of a dominant estate has free and full use of the entire easement granted, and neither party may unreasonably interfere with the other's use." **_Kushner v. Butler County Airport Auth._**, 764 A.2d 600, 603 (Pa. Super. 2000) (citation omitted); **_see Palmer v. Soloe_**, 601 A.2d 1250, 1252 (Pa. Super. 1992) ("An easement, once acquired, may not be restricted unreasonably by the possessor of the land subject to the easement.") (citation omitted). Thus, subject to the specific terms of the easement granted, a servient estate owner retains the right to use an access easement located on his property so long as his use does not unreasonably restrict the dominant estate owner's right to traverse the eased area. **_See Kushner_**, 764 A.2d at 603.

Where a party implements a barrier or gate within an eased area, this Court has stated:

> The erection of a gate should not be restrained unless it is an unreasonable interference with an easement, or completely denies the rights of the user. Gates or moveable bars, if not an unreasonable obstruction to the use of an easement, are not an unlawful abridgement of the right of passage under easement.

**_Matakitis v. Woodmansee_**, 667 A.2d 228, 232-33 (Pa. Super. 1995) (citations, quotation marks, and brackets omitted). Pennsylvania courts have long recognized that the determination of whether a particular gate amounts to a wrongful obstruction presents "a question of fact." **_Connery v. Brooke_**,

73 Pa. 80, 84 (Pa. 1873). "What constitutes unreasonable interference on the part of the possessor of the land subject to the easement will depend upon consideration of the advantage to him of his desired use of the easement and the disadvantage to the owner of the easement." *Palmer*, 601 A.2d at 1253 (citations omitted). While it is axiomatic that the presence of a gate will afford a property owner at least some degree of protection, a servient estate owner must consider the specific features and characteristics of the gate implemented, including its method of operation, so as not to deny the dominant estate owner reasonable use of the easement. *See Kushner*, 764 A.2d at 604-05.

In his first, second, and third issues, Norton avers the trial court erred in finding that his proposed gate system constituted an unreasonable interference with Wagner's easement rights based upon its interpretation of the express language of the easement and the benefits the system would afford his property. Accordingly, we begin by turning to the language of the easement in question, which provides, in pertinent part:

> That the said parties ... do grant, bargain and sell unto the said parties ... and to their heirs and assigns, the free and uninterrupted use, liberty and privilege of and passage in and along a certain right of way or passage ....

> Together with free ingress, egress, and regress to and for the said parties ..., their heirs and assigns ... at all times and seasons forever hereafter[.]

Exhibit P-3 (unnecessary capitalization omitted).

Neither party disputes that this language unambiguously granted Wagner, by way of his predecessor in interest, the right to free and uninterrupted use of the easement area to access his property. Rather, Norton avers that the trial court erred in interpreting this language "in a manner that restricted [his] proposed gates." Appellant's Brief, at 24-25. Norton further avers the court erred in finding that his proposed electronic gate system, which would "allow for free and uninterrupted use of the easement area via a remote control and keypad[,]" would unreasonably interfere with Wagner's rights. *Id.* at 15. Additionally, in Norton's view, the gates would "be of little or no inconvenience" to Wagner because the system would include an "automatic closing feature" and thereby permit Wagner "to proceed through the gates without exiting his vehicle." *Id.* at 19. Furthermore, Norton asserts that the electronic gate system would be battery operated and fully functional during a power outage, and that even if the system were to malfunction, Wagner or anyone accessing his property could manually open the gates "by merely removing a pin and swinging the gate open." *Id.*

We cannot agree with Norton's arguments. Contrary to his insinuation, the trial court did not interpret the easement's language to expressly forbid the installation of a gate. *See* Appellant's Brief, 24. Rather, the trial court considered the language of the grant together with "the historical intent of the easement[,]" as memorialized in the 1959 indenture, "the facts of the case, and the future implications for each set of property interests" to evaluate "the

propriety of Norton's proposed gates." Trial Court Opinion, 5/23/25, at 7, 8 (unnecessary capitalization omitted).

The trial court analyzed the reasonableness of Norton's proposed gate system by weighing the benefits it would confer upon the servient estate against the burdens it would impose upon the dominant estate based on the evidence presented. At trial, Wagner expressed concern for the interruption the gate system would pose to him, guests, service providers, and emergency services personnel in accessing his property. **See** N.T. Trial, 10/23/24, at 33. Additionally, Wagner indicated he was concerned that, due to the electronic nature of the proposed gate system, accessing his property would be completely dependent upon both Norton's and any successor in interest's ability and willingness to maintain and repair the system and to ensure that it remained in good working order. **See id.** at 33-34, 36. Wagner also acknowledged his concern for the effect this physical restriction and reliance upon a third-party would have on any successor in interest of his property. **See id.** at 37. The trial court considered the benefits the electronic gate system would afford Norton's property as follows:

> Norton testified concerning alleged trespassers, by which he was referring to individuals mistakenly driving down the easement area thinking it is a roadway and needing to turn around on his property in order to leave. Norton testified that he experienced property damage as a result of vehicles turning around on his property and needing to redo his yard. Norton also testified about an alleged incident in which he got into a physical altercation with a lost driver. Norton acknowledged that he has since successfully mitigated the turnaround issue by placing rocks along the border of the easement, which has reduced the number of vehicles

- 10 -

driving onto his yard and getting stuck. Finally, Norton testified that sometimes drivers delivering things to his house end up on the easement driveway. Of course, these delivery drivers—making deliveries to Norton's house—are not trespassing on Norton's property. In any event, he acknowledged that once he informs the drivers not to go down that route, the drivers subsequently enter his property by his primary driveway from Sugan Road.

* * *

Norton also testified that he would benefit from the two [] locked gates because they were part of a broader plan to erect fencing around the entire perimeter of his property allegedly to keep deer out and to prevent his dogs from roaming away. These proffered benefits failed on their face as neither deer nor dogs would be deterred by an electronic locking mechanism any more than they would be deterred by unlocked swinging gates.

Further, with regard to deer, the court determined that there would be no practical benefit as deer can easily leap over the gates as proposed.  ...

With regard to his dogs, the court found Norton's testimony that he could not use an already-installed invisible electronic fence to keep his pets on his property to be not credible. He testified that it was "designed for dogs [he] had 15 years ago," that it would not contain the dogs he has today, and that the electronic fence continues to break due to the nature of there being a lot of stone on his property which he stated interferes with the underground electric wiring. [N.T. Trial, 10/23/24, 85, 86-87.] If the rocky soil interferes with the functionality of underground wiring for [an] electronic dog fence, it would likewise interfere with the functionality of the underground wiring for the two [] proposed locked gates.

Furthermore, the court found Norton's claim that the proposed gates are necessary to keep his dogs safely on his property to be not credible. In fact, his plan would place his dogs in danger, as they would be able to roam in the path of vehicles accessing the Wagner property by way of the easement. Property owners regularly fence-in only a portion of their property for their pets— such as a specific yard area—rather than the entire perimeter of the property. In particular, people regularly erect fences to keep dogs off driveways for safety purposes.

- 11 -

In [response] to a question about whether his goal could be achieved through an alternative method, such as by placing the fence along the boundary line of the easement area that borders his property line, Norton [stated] that he was not interested in "fencing [him]self off [from his own] property." [*Id.* at 76, 87.]

The evidence produced at trial reflected that—rather than there being a necessity to keep trespassers and deer out or pets in—Norton's true concern has been his desire for control over the easement area *vis a vis* Wagner, based on his misperception of the nature of their respective property interests.

* * *

Norton has at times suggested that the court should not be weighing the different considerations at play and, instead, should look only at the asserted benefits to be gained by the servient property owner. Norton has further suggested that the court determine whether a reasonable property owner would seek the type of action proposed in order to obtain the asserted benefit.

Contrary to Norton's assertion, the ultimate determination regarding Norton's proposal for two [] locked gates cannot be based solely on the interests of the servient estate's owner or the benefits to be gained by the servient estate, but rather on balancing the inconvenience of the encumbrance on the dominant estate owner's explicit legal right to free and full use of the easement without unreasonable interference. This includes weighing aspects unique to the factual circumstances here, such as: (1) the unchanging residential nature of the Wagner and Norton properties; (2) the intent and extent of use of the easement; and (3) the number and type of gates and their manner of operation.

* * *

At the trial, [Norton] relied solely on his testimony and did not present any supporting documentation or other evidence of his plans or of the mechanics and functionality of the system of gates he was proposing. Norton stated that the battery for the gates would be powered through a small device that continuously charges the system[, and] that the gates themselves would be activated with either a keypad or a remote clicker. Norton stated

that on the way out, the gates would allegedly open automatically. Norton testified that the battery charging system would be hooked up to an electronic power source running from his house, and that in the event of a power outage, his generator would provide backup power. Norton also offered that the gates could be opened manually by exiting one's vehicle and physically removing a safety pin, then manually opening the gate(s) in order to enter and exit.

In terms of guests and other visitors, Norton testified that because Wagner would be supplied with a code for the keypad, Wagner would be able to call his guests and instruct them to enter the code in order to open both gates. [] Norton testified that he would provide law enforcement, EMS, and the fire department with the keypad code for the gate(s) as well.

Notably, unlike the cases on which Norton relies, Norton here proposes two [] locked gates rather than one [], which doubles the level of inconvenience and obstruction of the easement rights. For example, while it conceivably might seem reasonable for a first responder to stop, get out of their vehicle, and unhinge one [] gate (in the event of a loss of power to the electric gate system), having to do so twice for two [] locked gates raises the severity of concern and could create a costly—even life-threatening—delay in accessing emergency services. Norton could not identify any authority which recognized the reasonableness of two [] locked gates. Not only is there no such authority for such a drastic impairment of access under any circumstances, there is certainly no such authority for two [] locked gates when, as here, any countervailing benefit to be gained is negligible at best.

Trial Court Opinion, 5/23/25, at 10-13 (citations, quotation marks, unnecessary capitalization, and emphasis omitted).

Contrary to Norton's assertions, the trial court acknowledged and assessed the purported protection and convenience that his proposed gate system would afford his property and reasonably concluded that such benefits paled in comparison to the interference the system would impose upon Wagner's right to traverse the eased area to access his property. The trial

court's findings of fact are supported by competent evidence, and we discern no legal error in its determination that Norton's proposed gate system would unreasonably interfere with Wagner's free and uninterrupted use of the easement. *See Spolar*, 326 A.3d at 1001.

In his fourth and fifth issues, Norton avers the trial court erred by requiring him to consider alternative solutions to his proposed gate system "notwithstanding the protections and benefits the gates would afford" his property. Appellant's Brief, at 27. Specifically, Norton contests the court's determination that Norton could achieve his purported goals of thwarting trespassers and deterring deer from entering his property and preventing his pets from leaving his property by posting no trespass signs or installing a fence along the perimeter of his property. *See id.* at 16.

We discern no error. Contrary to Norton's averments, the trial court did not require Norton to employ alternative means to achieve his expressed goals. Rather, the trial court considered alternatives to his proposed gate system, such as no trespassing signage and fencing, in assessing its reasonableness. To meaningfully balance the competing interests in an eased area, a court would naturally, logically, and in some instances, necessarily consider such information to determine whether a proposed encumbrance constitutes a reasonable interference under the specific circumstances presented. As the trial court explained:

> Norton misconstrues or misrepresents the court's consideration of alternative ways Norton might achieve his stated goals. Contrary

to Norton's claim, the court did not require him to consider alternatives to the gates. Rather, as Norton's counsel agreed during post-trial oral argument, the court needed to weigh Norton's proposal with the circumstances in order to make a reasonableness assessment. [*See* N.T. Oral Argument, 2/24/25, at 6, 11]. As such, the court concluded that it could only weigh the reasonableness [of Norton's proposed gate system] by considering, *as part of the equation*, the extent to which any legitimate goals could be achieved in other ways that would not result in the same level of encumbrance on Wagner's rights as the dominant property owner. It would be challenging, if not impossible, to do the required analysis without at least considering alternatives to the two [] locked gates the servient landowner has proposed.

Trial Court Opinion, 5/23/25, at 13 (unnecessary capitalization omitted; emphasis in original).

Because the trial court's judgment is supported by adequate evidence, Norton is not entitled to relief. **See Carolino**, 197 A.3d at 1199. Accordingly, we affirm the judgment entered in favor of Wagner.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/6/2026

- 15 -